(No. 15292.—Decree affirmed.)

WILLIAM H. FOWLER *et al.* Plaintiffs in Error, *vs.* THE
MARION AND PITTSBURG COAL COMPANY, Defendant in
Error.

*Opinion filed December 16, 1924—Rehearing denied Feb. 14, 1925.*

1. MINES—*owner may convey separate estate in coal.* Coal un-
der the soil is real estate, and when it is conveyed by the owner
reserving the surface of the land two separate estates exist, each
of which may be conveyed or devised and will pass by descent and
is subject to taxation.

2. SAME—*right to take coal is an interest in land and not mere
license.* A lease of the right and privilege to take away coal from
the lessor's land is a grant of an interest in the land and not a
mere license to take the coal.

3. FREEHOLD—*what is a freehold.* A freehold estate is any es-
tate of inheritance or for life in either a corporeal or incor-
poreal hereditament existing in or arising from real property of
free tenure.

4. SAME—*when mining lease conveys freehold estate.* A mining
lease by which the lessee is given the unlimited right to go upon
the land and mine for coal and is given certain specific easements
into and over the surface of the land for mining purposes for an
unlimited time or until the coal is exhausted is a conveyance of
a freehold estate, although the interest conveyed is subject to the
payment of a royalty to the lessor.

5. LEASES—*when bill is insufficient to declare forfeiture of min-
ing lease.* Where a mining lease makes the payment of royalty to
the lessor the only condition of forfeiture but provides for the pay-
ment of a rental per acre for any lands not mined or until mining
is begun, a bill is not sufficient to declare a forfeiture where it
fails to allege any particular non-payment of royalty or notice and
demand therefor, and does not allege any breach for failure to be-
gin mining operations but merely alleges failure to pay the stipu-
lated rental and recites the demand and notice therefor.

6. PLEADING—*on demurrer, allegations of bill are taken most
strongly against pleader.* On the hearing of a demurrer all allega-
tions of a bill are to be taken most strongly against the pleader.

DUNCAN, C. J., and FARMER and DUNN, JJ., dissenting.

WRIT OF ERROR to the Circuit Court of Williamson
county; the Hon. D. T. HARTWELL, Judge, presiding.

WALTER M. FOWLER, and FOWLER & FOWLER, for plaintiffs in error.

WILLIAM H. WARDER, and HOSEA V. FERRELL, for defendant in error.

Mr. JUSTICE HEARD delivered the opinion of the court:

Plaintiffs in error, who are the heirs of William T. Fowler, deceased, filed in the circuit court of Williamson county their bill in chancery, and thereafter their amended bill in chancery, praying that the defendant in error be required to release of record, in accordance with the provisions of section 22 of chapter 94 of Cahill's Statutes of 1923, a certain instrument of writing executed by Fowler in 1906 to the assignors of defendant in error and designated as a certain forfeited coal mining lease. Defendant in error demurred to the amended bill. The court sustained the demurrer and dismissed the bill for want of equity. This writ of error was sued out to review that decree.

The first question to be considered here is whether or not a freehold is involved. In determining whether or not instruments of writing like the one in question convey any interest in land, and if they do, whether or not they convey a freehold or some lesser estate, we must first ascertain the intention of the parties to the instruments as that intention has been expressed by them in the language which they have used in the instruments themselves.

The instrument in question, which is set out in full in the amended bill of complaint, provided that the party of the first part, for and in consideration of one dollar and other considerations, demised, leased and to mine let to G. H. Goodall and C. A. Gent, and their successors and assigns, all the coal contained in or under 240 acres of land described in the instrument. The instrument contained the following provision: "The coal hereby leased to include all the coal that can be economically mined or taken out from

the above premises, together with the right to enter upon and into said lands and to dig, mine and remove said coal, and the said parties of the first part do hereby lease and grant unto the said party of the second part, his successors and assigns, the right of way and use of and for a railroad, mine roads, wagon roads, air shafts, turn-outs, switches, reservoir, ditches and drains they may find it necessary or convenient to construct upon or across said tract of land for the proper mining of said coal, provided the same shall not be located within a garden enclosure or in any way interfere with dwelling houses or other buildings; also the use of land for piling coal or culm and for preparing and forwarding the coal to be mined under this agreement, together with the right to take, without charge, from said land all the earth and other material, except timber, required in the construction of a railroad through said tract, or reservoir for water thereon; and it is further agreed and understood that the party of the second part, his successors and assigns, shall have the right to re-build, re-construct or remove any or all the buildings, fixtures, appurtenances and improvements during the continuance of this agreement and until the coal in the adjoining and contiguous lands that can be worked out from these openings, slopes, shafts and tunnels shall have been worked out, the removal of buildings, fixtures and appurtenances and improvements to be made within a reasonable time after the coal in and under the lands shall have been exhausted."

Coal under the soil is real estate, capable of being conveyed and held by title in fee in one person while the right to the surface is in another. The owner of land may convey the coal and mineral rights and reserve the surface, or convey the surface and reserve the mineral. When such a conveyance is made two separate estates exist, and each may be conveyed or devised or will pass by descent, each is subject to taxation, and each is real estate. (*Big Creek Coal Co.* v. *Tanner,* 303 Ill. 297.) A lease of the right

and privilege to take away coal from the lessor's land is the grant of an interest in the land and not a mere license to take the coal. (*Consolidated Coal Co.* v. *Peers,* 150 Ill. 344; *Calame* v. *Paisley,* 296 id. 618.) Estates or interest in lands are of two kinds: estates of freehold and estates of less than freehold. A freehold estate is defined as any estate of inheritance or for life in either a corporeal or incorporeal hereditament existing in or arising from real property of free tenure. (10 R. C. L. 647.) Estates less than freehold are, as the term signifies, estates or interests in land less than a freehold, and are of three kinds: estates for years, estates at will and estates at sufferance. The instrument in question in this case conveyed from the lessor to the lessee an interest in the lessor's land, and while this interest was subject to be forfeited upon a certain contingency expressed in the writing, this interest was not an estate for years, at will or by sufferance, but by the lease in question the lessee was given the unlimited right to go upon the land in question and mine for coal, and also given divers specific easements into and over the surface of the land for an unlimited time to the extent that the same were necessary for the working of the mine. A grant of such a writing is in legal effect a conveyance of a freehold estate. *Watford Oil and Gas Co.* v. *Shipman,* 233 Ill. 9; *Bruner* v. *Hicks,* 230 id. 536; *Ohio Oil Co.* v. *Daughetee,* 240 id. 361.

In the instrument in writing in question it was provided: "That the party of the first part shall pay all taxes on the land hereby leased and that the said party of the second part shall pay all taxes on his buildings and improvements; and the said party of the second part, his successors and assigns, hereby covenants and agrees to pay the said party of the first part or his legal representatives the sum of three cents per ton for every ton of two thousand pounds of good, clear merchantable mine run coal taken from said above described lands, the said three cents per ton for coal mined as aforesaid to be due and payable only on the first day of the

second month succeeding the month for which the royalty shall have accrued. It is further agreed and understood that after the first year the said party of the second part, his successors and assigns, shall pay to the party of the first part or his grantees or heirs an annual rent of one dollar per acre until actual mining operations are commenced either upon the lands hereby leased or upon adjoining and contiguous lands through which the coal herein intended to be conveyed may be mined and removed,—that is to say, the party of the second part, his successors and assigns, shall pay annually on the first day of January to said party of the first part, his grantees or heirs, (who shall be legally entitled to the fee simple ownership of the lands,) the sum of one dollar for each acre of the tract out of which no coal at that time shall have been mined and removed, and all payments of rent so made shall be credited and allowed as advanced payment of royalty of three cents per ton of two thousand pounds reserved as aforesaid, and shall be deducted without interest installments, not exceeding at any one time, when deducted, one-half of the whole sum due in the monthly payments for the royalty from which said installment is deducted. And it is furthermore agreed that if at any time the said party of the second part, his successors or assigns, shall be in default and fail to pay any sum due for royalty, as aforesaid, for the term of thirty days after written demand therefor by the party legally entitled to demand and receive the same, the party of the second part, his successors and assigns, shall forfeit all right to mine or otherwise hold and enjoy the said tract of land, and after such default and demand, as aforesaid, the party legally entitled to the ownership of said land in fee may at once, or at any time thereafter, enter into the exclusive possession thereof and hold the same free and discharged of every and all claims of the party of the second part, his successors and assigns or other legal representatives. And it is further agreed and understood that the party of the

second part or their assigns are to commence sinking shaft or building a railroad upon the above described lands, or lands adjacent to or in the vicinity thereof and from which the coal under said lands can be mined and taken out, within twelve months from the date of this agreement, prospecting of these lands to be completed within six months from the date of this agreement. And it is further agreed that the party of the second part, its successors or assigns, after they have commenced sinking shaft, shall continue in good faith until the coal is reached and actual mining operations begun, unless prevented by strikes, lockouts or other unavoidable accidents, it being further understood that said party of the second part, their successors and assigns, shall begin taking out coal from the above lands within three years from the date hereof. In the event coal is not taken out by the end of the third year from the date of this lease, all payments of annual rental of one dollar per acre, as aforesaid, including the annual rent due at the end of the third year hereafter, shall not be considered as advanced royalty but shall be paid to said lessor as bonus and as compensation for the prolongation of the time within which to begin mining said coal, which said payments after the end of the second year shall not be deducted from the monthly payments of royalty as above set forth."

The lands described in the lease consisted of two tracts of land separated by a 40-acre tract. One tract contained 40 acres and the other tract contained 200 acres. In the amended bill of complaint it is alleged that in the month of June, 1909, the lessees or assigns began taking out coal from the 40-acre tract but that they had at no time made any attempt to begin mining operations on the 200-acre tract or upon any lands contiguous or adjacent thereto. The amended bill further alleged that on January 1, 1919, there became due under the terms of the lease from defendant in error to the lessor, as an annual rental for the 40-acre tract, the sum of $40, and that the lessor on the first

day of August, 1919, served upon the defendant a written notice and demand, as follows: "Pursuant to the terms of a mining lease made and executed on the 12th day of February, A. D. 1906, by William T. Fowler, lessor, to G. H. Goodall and C. A. Gent, lessees, leasing to them [describing the 40 acres,] which said lease has been assigned to you, there became due on the first day of January, A. D. 1919, and there is now due and unpaid, the sum of forty ($40) dollars. You are hereby notified that unless the said amount is paid to me within thirty (30) days from the date of the service of this notice on you I shall consider the lease forfeited and at an end." It was also alleged in the amended bill that on January 1, 1919, there became due to the lessor as an annual rental and as compensation for the prolongation of the time in which to begin mining coal the sum of $200 on the 200-acre tract, and that in consequence of the defendant's refusal to pay the same the lessor served on the defendant on August 1, 1919, a notice and demand in writing, as follows: "Pursuant to the terms of a mining lease made and executed on the 12th day of February, A. D. 1906, by William T. Fowler, lessor, to G. H. Goodall and C. A. Gent, lessees, leasing to them [describing the 200 acres,] which said lease has been assigned to you, there became due on the first day of January, A. D. 1919, and there is now due and unpaid, the sum of two hundred ($200) dollars. You are hereby notified that unless the said amount is paid to me within thirty (30) days from the date of the service of this notice on you I shall consider the lease forfeited and at an end." The amended bill further alleged that the defendant failed to pay either of said sums of $200 and $40, or any part thereof, and that on September 12, 1919, the lessor served a written notice on the defendant that the lease had been forfeited by its terms, and that there was then due and unpaid, after notice and demand, the sum of $240, and that the lessor had elected to forfeit the lease and declared the same forfeited and at an end, pursuant

to said notice and demand.   Demand was also made to have the lease released of record, and notice was given that unless the demand was complied with within sixty days, proceedings to compel the release would be commenced.   The bill alleged that defendant did not comply with said demand and that therefore the suit was brought.

The only provision contained in the instrument in question for a forfeiture was for a failure to pay royalty, and it will be noticed from the allegations of the bill that the sums of $40 and $200 claimed to be due January 1, 1919, and demanded of defendant by the lessor on August 1, 1919, were sums which were claimed to be due for rent and not for royalty.   While there is an allegation in the bill that at times defendant had deducted one-half of the royalty, there is no allegation in the bill as to the amount of such deductions, nor was any notice or demand for the same served on defendant in error in accordance with the terms of the instrument, and the lease cannot be held to have been forfeited by reason of non-payment of royalty.   By the instrument in question royalties and rents are each defined and they are each distinct from the other.   The notice of forfeiture of September 12, 1919, was based on the demands of August 1, 1919, and these demands were demands for rent and not for royalties and could not serve as the basis for the forfeiture of the instrument in question by which a freehold was conveyed.

It is contended by plaintiffs in error that defendant in error never having attempted any mining operations with reference to the 200-acre tract, this failure was a breach of the contract and that plaintiffs in error had a right to forfeit the same for that reason.   Whether under the terms of the instrument in question plaintiffs in error had such right is immaterial, as there is no allegation in the bill that the lease was forfeited on account of such breach, and the notice of forfeiture places the forfeiture upon a different ground.

Upon the hearing of the demurrer all the allegations of the bill were to be taken most strongly against the pleader. The amended bill having failed to show that plaintiffs in error were entitled to relief; the court properly sustained the demurrer.

The decree of the circuit court is affirmed.

*Decree affirmed.*

DUNCAN, C. J., and FARMER and DUNN, JJ., dissenting.