(No. 25967.—

THE BLUE BIRD AIR SERVICE, INC., Appellant, *vs.* THE CITY OF CHICAGO *et al.* Appellees.

*Opinion filed April 10, 1941.*

EDWARD H. MURNANE, and JAMES A. HARRINGTON, (SIDNEY R. ZATZ, of counsel) for appellant.

BARNET HODES, Corporation Counsel, and ESSINGTON & McKIBBIN, (JOSEPH F. GROSSMAN, J. HERZL SEGAL, L. LOUIS KARTON, HAMILTON K. BEEBE, and WILLIAM A. BRUNSTAD, of counsel,) for appellees.

Mr. CHIEF JUSTICE GUNN delivered the opinion of the court:

Appellant, the Blue Bird Air Service, Inc., filed its complaint in the superior court of Cook county to enjoin defendants, the city of Chicago, its mayor, comptroller and

commissioner of public works, from entering into a contract with the Monarch Air Service, Inc., granting the latter a concession for the exclusive operation of sightseeing airplanes from the Chicago Municipal Airport, and also to restrain the defendants from interfering with appellant's operation of an air sightseeing business originating from the Chicago Municipal Airport. By leave of court the Monarch Air Service, Inc., was allowed to become a party defendant. All of the defendants answered, and, upon a hearing, a decree was entered dismissing the complaint for want of equity. Appellant has filed an appeal directly to this court.

At the outset the question of jurisdiction of this court to entertain a direct appeal is presented. Appellant leased from the city of Chicago hangar space No. 17 of the Chicago Municipal Airport, which was to be used for hangar and aviation purposes only, and which lease contained the following provision:

"To use said premises only for the purpose of carrying on an air transportation and storage business, in receiving and discharging of passengers, baggage, mail and freight; and/or for the housing and servicing of airplanes; and/or for the sale of airplanes and parts; and not to use or permit the use of said premises for a school of aviation, or for furnishing instructions to students or for any purpose in connection with student flying; and not to use or permit the use of said premises for restaurant purposes, or for the sale of foodstuffs, tobacco, candy, beverages, newspapers or any merchandise whatsoever, except as above stated."

The term of the lease is from February, 1936, to December 31, 1950.

In January, 1939, Oscar E. Hewitt, commissioner of public works of Chicago, advertised for proposals for a concession for the exclusive operation of sightseeing airplanes at the Chicago Municipal Airport for a period of four years, according to specifications on file in his office. In response thereto various proposals were received by said commissioner, including one from appellant and one from

the Monarch Air Service, Inc., and the latter, being the highest bidder for the concession, it was announced that a contract would be entered into between the city of Chicago and said Monarch Air Service, Inc., granting the latter the concession for the exclusive operation of sightseeing airplanes for said period. On April 3, 1940, a resolution was adopted by the city council of Chicago authorizing the commissioner of public works to enter into a contract with the Monarch Air Service, Inc., for a period of four years, in accordance with the advertised specifications, for the operation of the Chicago Municipal Airport sightseeing concession.

Appellant claims that it had invested considerable money in airplanes used in connection with air transportation and air sightseeing business, and that the principal part of its transportation business consisted in sightseeing, and that the action of the defendants threatened to destroy the business of appellant and render its property worthless, and that the granting of an exclusive concession, as contemplated, was a violation of the provisions of its lease, and in violation of the constitution of the United States and of the State of Illinois. It is further claimed that the Civil Aeronautics act of 1938, (U. S. C. A. title 49, secs. 452-a, 453, 401, 402,) contained provisions which prohibited the city of Chicago from granting an exclusive concession for sightseeing purposes by reason of the fact that Federal funds had been used in the construction of said airport.

The answer of the defendants alleges that if appellant was using the rented space as a base for sightseeing purposes it was in violation of the lease, and that under the terms of the lease appellant was entitled to use only the rented premises in air transportation and storage business, receiving and discharging passengers, mail and freight, and denies that airplane sightseeing trips were within the terms of the lease; that the conduct of sightseeing service by more than one company, with the incidental sale of tickets,

solicitation of business, and parking of airplanes was annoying to the public, and promoted disorder and confusion and interfered with the facilities of the airport. Certain violations of the lease were also set forth in the answer, and defendants also, by way of answer, claimed statutory authority to operate the airport and lease the same, or any part thereof, or to let or grant privileges to any part thereof, and to fix, charge and collect rent, compensation, tolls, and fees for the use thereof. (Ill. Rev. Stat. 1939, chap. 24, art. 5, sec. 100, par. 65. 99½.) The answer further denied that defendants' action in any way violated the Civil Aeronautics act.

The trial court held that the plaintiff's lease was not broad enough to cover sightseeing, and that the city could grant an exclusive right to conduct sightseeing from the airport, and that there was no violation of the constitution or Federal law, or any violation of the terms of the lease upon the part of plaintiff, and thereupon dismissed the complaint.

From the foregoing resume of the issues it can be readily seen that the real points in controversy are (a) the construction of appellant's lease, and (b) the right of the city of Chicago to grant an exclusive concession or license to appellee the Monarch Air Service, Inc., for air sightseeing purposes. The cause does not involve a franchise, because the latter is a privilege emanating from the sovereign power of the State, owing its existence to a grant, or, at common law, to prescription, which presupposes a grant, and is invested in individuals or a body politic. (*Chicago City Railway Co.* v. *People,* 73 Ill. 541; *Board of Trade* v. *People,* 91 id. 80; *People* v. *City of Chicago, 257* id. 380.) It does not involve a freehold, because a lease for any number of years is not a freehold. (*Fowler* v. *Marion and Pittsburg Coal Co.* 315 Ill. 312.) It does not involve the validity of an ordinance, and even though the resolution of the city council could be deemed in the nature of an ordi-

nance there was no certificate of the trial judge certifying that, in his opinion, the public interest required it be passed upon by the Supreme Court.

The trial court's construction of the contract of appellant with the city of Chicago does not involve a constitutional question. It is only in those cases which involve the construction of the constitution that a direct appeal to the Supreme Court is permitted. If it be assumed that the trial court was in error in its construction of the contract, still an erroneous or unjust decision in that respect does not deprive one of due process of law, and does not raise a constitutional question, but is merely a question of the proper construction of a written instrument. *De La Cour v. De La Cour,* 363 Ill. 545; *O'Connor v. Rathje,* 368 id. 83; *Trustees of Schools v. City of Chicago,* 373 id. 508; *Lewis v. West Side Trust and Savings Bank,* 373 id. 245.

If it can be claimed that the trial court improperly construed the Civil Aeronautics act, or the Cities and Villages act, this would not authorize a direct appeal, because it is only the validity of a statute that authorizes such an appeal. The validity of neither act mentioned is involved. *Wilson v. Prochnow,* 354 Ill. 98; *Will v. Voliva,* 344 id. 510; *First Nat. Bank v. Village of South Pekin,* 371 id. 605.

The questions involved, viz., the authority of the city of Chicago to grant an exclusive concession for certain uses of property owned by it, that of the construction of the lease given to another party for the use of a part of the same property, involve ordinary questions of law, and the court's judgment on such questions, whether right or wrong, does not involve a construction of the constitution.

The cause is transferred to the Appellate Court for the First District.                                    *Cause transferred.*