Blue Bird Air Service, Inc., Appellant, v. City of Chicago et al., Appellees.

## Gen. No. 41,780.

Heard in the second division of this court for the first district at the December term, 1940. Opinion filed February 10, 1944.

EDWARD H. MURNANE and JAMES A. HARRINGTON, both of Chicago, for appellant, SIDNEY R. ZATZ, of Chicago, of counsel.

BARNET HODES, Corporation Counsel, for certain appellees; JOSEPH F. GROSSMAN, First Assistant Corporation Counsel, J. HERZL SEGAL and L. LOUIS KARTON, Assistant Corporation Counsel, of counsel.

ESSINGTON & MCKIBBIN, of Chicago, for certain other appellee; HAMILTON K. BEEBE and WILLIAM A. BRUNSTAD, both of Chicago, of counsel.

MR. JUSTICE SULLIVAN delivered the opinion of the court.

This appeal by plaintiff, Blue Bird Air Service, Inc., from the decree entered herein denying the relief sought by its complaint, was originally perfected to the Supreme Court. In the opinion of the Supreme Court in *Blue Bird Air Service, Inc. v. City of Chicago*, 376 Ill. 272, whereby the cause was ordered transferred to this court, the pleadings, issues and the determination of such issues by the trial court were set forth as follows:

"Appellant, the Blue Bird Air Service, Inc., filed its complaint in the Superior court of Cook county to enjoin defendants, the city of Chicago, its mayor, comptroller and commissioner of public works, from entering into a contract with the Monarch Air Service, Inc., granting the latter a concession for the exclusive operation of sightseeing airplanes from the Chicago Municipal Airport, and also to restrain the defendants from interfering with appellant's operation of an air sightseeing business originating from the Chicago Municipal Airport. By leave of court the Monarch Air Service, Inc., was allowed to become a party defendant. All of the defendants answered, and, upon a hearing, a decree was entered dismissing the complaint for want of equity. . . . Appellant leased from the city of Chicago hangar space No. 17 of the Chicago Municipal Airport, which was to be used for hangar and aviation purposes only, and which lease contained the following provision:

'To use said premises only for the purpose of carrying on an air transportation and storage business, in receiving and discharging of passengers, baggage, mail and freight; and/or for the housing and servicing of airplanes; and/or for the sale of airplanes and parts; and not to use or permit the use of said premises for a school of aviation, or for furnishing instructions to students or for any purpose in connection with student flying; and not to use or permit the use of said premises for restaurant purposes, or for the sale of foodstuffs, tobacco, candy, beverages, newspapers or any merchandise whatsoever, except as above stated.'

"The term of the lease is from February, 1936, to December 31, 1950.

"In January, 1939, Oscar E. Hewitt, commissioner of public works of Chicago, advertised for proposals for a concession for the exclusive operation of sightseeing airplanes at the Chicago Municipal Airport for a period of four years, according to specifications on file in his office. In response thereto various proposals were received by said commissioner, including one from appellant and one from the Monarch Air Service, Inc., and the latter, being the highest bidder for the concession, it was announced that a contract would be entered into between the city of Chicago and said Monarch Air Service, Inc., granting the latter the concession for the exclusive operation of sightseeing airplanes for said period. On April 3, 1940, a resolution was adopted by the city council of Chicago authorizing the commissioner of public works to enter into a contract with the Monarch Air Service, Inc., for a period of four years, in accordance with the advertised specifications, for the operation of the Chicago Municipal Airport sightseeing concession.

"Appellant claims that it had invested considerable money in airplanes used in connection with air transportation and air sightseeing business, and that the principal part of its transportation business consisted

in sightseeing, and that the action of the defendants threatened to destroy the business of appellant and render its property worthless, and that the granting of an exclusive concession, as contemplated, was a violation of the provisions of its lease, and in violation of the constitution of the United States and of the State of Illinois. It is further claimed that the Civil Aeronautics act of 1938 (U. S. C. A. title 49, secs. 452–a, 453, 401, 402) contained provisions which prohibited the city of Chicago from granting an exclusive concession for sightseeing purposes by reason of the fact that Federal funds had been used in the construction of said airport.

"The answer of the defendants alleges that if appellant was using the rented space as a base for sightseeing purposes it was in violation of the lease, and that under the terms of the lease appellant was entitled to use only the rented premises in air transportation and storage business, receiving and discharging passengers, mail and freight, and denies that airplane sightseeing trips were within the terms of the lease; that the conduct of sightseeing service by more than one company, with the incidental sale of tickets, solicitation of business, and parking of airplanes was annoying to the public, and promoted disorder and confusion and interfered with the facilities of the airport. Certain violations of the lease were also set forth in the answer, and defendants also, by way of answer, claimed statutory authority to operate the airport and lease the same, or any part thereof, or to let or grant privileges to any part thereof, and to fix, charge and collect rent, compensation, tolls, and fees for the use thereof. (Ill. Rev. Stat. 1939, chap. 24, art. 5, sec. 100, par. 65.99–½.) The answer further denied that defendants' action in any way violated the Civil Aeronautics act.

"The trial court held that the plaintiff's lease was not broad enough to cover sightseeing, and that the city could grant an exclusive right to conduct sight-

seeing from the airport, and that there was no violation of the constitution or Federal law, or any violation of the terms of the lease upon the part of plaintiff, and thereupon dismissed the complaint.

"From the foregoing resume of the issues it can be readily seen that the real points in controversy are (a) the construction of appellant's lease, and (b) the right of the city of Chicago to grant an exclusive concession or license to appellee the Monarch Air Service, Inc., for air sightseeing purposes."

It was held at p. 276:

"The questions involved, viz, the authority of the city of Chicago to grant an exclusive concession for certain uses of property owned by it, that of the construction of the lease given to another party for the use of a part of the same property, involve ordinary questions of law, and the court's judgment on such questions, whether right or wrong, does not involve a construction of the constitution."

Subsequent to the transfer of the cause to this court, the defendant, City of Chicago, presented its written motion that "the appeal in said cause be dismissed on the ground that the questions involved herein have become moot since the perfecting of this appeal" and its suggestions in support of its motion averred:

"On April 1, 1942, Blue Bird Air Service, Inc., plaintiff, requested the City of Chicago real estate department that its lease be surrendered and cancelled and that the city enter into a lease with The Aeronautical University, demising to it the same premises for the same rental as is provided in the lease to Blue Bird Air Service, Inc., such new lease to be for the unexpired term of the lease with said Blue Bird Air Service, Inc. Pursuant to this request, the lease to the plaintiff was cancelled as of June 18, 1942 and a new lease covering the same premises formerly leased to the plaintiff was made with The Aeronautical University, Inc., for a term beginning May 1, 1942 and expiring December 31,

1950. This lease is still in effect and the lessee is in possession of the premises. The present lessee occupies the hangar space exclusively for a ground school for flying, repairing and servicing of aircraft and for lessee's offices and for housing, storing, repairing and servicing of aircraft and for storing fuel, materials and supplies for aircraft. Under its lease the lessee is not permitted to use the flying field, runways, taxi strips and common appurtenances of the Municipal Airport, nor is it permitted to navigate any aircraft from, upon or over said airport. Said lessee has expressed itself as having no interest in the matter of the granting of a contract for an exclusive concession for operating sightseeing airplanes.''

In its counter suggestions in opposition to the allowance of the motion to dismiss, plaintiff admits its surrender of the lease and its cancellation but states that ''its complaint alleged that plaintiff presently and for more than ten years has been engaged in an air transportation business and as part thereof conducts an airplane sightseeing business from and out of the Chicago Municipal Airport''; that it ''has in its business assets in excess of $66,000, over $11,000 invested in a hangar built on hangar space number 17 on said airport leased by plaintiff from defendant, City of Chicago, and over $20,000 being invested in airplanes used in connection with said air transportation and sightseeing business'' and that ''on January 31, 1936, plaintiff, as lessee, entered into a lease with defendant, City of Chicago, as lessor''; that ''the plaintiff carried on its business long prior to the execution of the lease entered into between the plaintiff as lessee and the City of Chicago as lessor'' and that ''the interest of the plaintiff was for the protection of its business which it had established over a number of years, and in which it had made a considerable investment. The lease with the City was merely an incident of such business, and was not required by it for the carrying

on of its business, but consisted of merely an additional facility."

In said counter suggestions pars. 5 and 7 of the complaint are quoted as follows:

"5. Plaintiff's airplane sightseeing business conducted from said Chicago Municipal Airport has been and is a profitable one. The defendants, by their conduct as hereinafter set forth, threaten to destroy the said business of said plaintiff and thereby render plaintiff's property and investment in said business valueless, and unless restrained by this court, defendants will by their said conduct destroy the said business of plaintiff and render plaintiff's property and investment in said business valueless, and will deprive plaintiff of the profits it would have made therein.

"7. The defendant, City of Chicago, has been given no power or authority, by statute or otherwise, and has no power or authority to grant any concession for the exclusive operation of sightseeing airplanes at the Chicago Municipal Airport, or to enter into any contract therefor."

It is also asserted in such counter suggestions that "it is apparent [from paragraph 5] that what the plaintiff was attempting to protect was the established business of the plaintiff" and that "it was also contended by the plaintiff that the grant of the exclusive concession for air sightseeing at the airport was in violation of the Civil Aeronautics Act of 1938."

Thus it appears that plaintiff now contends that, notwithstanding its surrender of its lease to a portion of the airport, it still possesses and alleged in its complaint a right and interest that will suffer damage by the granting of an exclusive concession by the City of Chicago to the Monarch Air Service, Inc., for the operation of sightseeing airplanes at and from the Municipal Airport; that said right and interest are entirely separate and distinct from and independent of such rights as it claimed to have and asserted under

the lease; and that it is therefore entitled to the relief sought by its complaint.

That plaintiff's present position and theory constitute a departure from its position and theory in the trial court and that it placed no such interpretation on the allegations of its complaint there as it attempts to do here is clearly shown by the record.

At the outset of the trial and before any evidence was heard the chancellor, addressing counsel for all the parties, made a statement, the pertinent portions of which are as follows:

"Well then we get right to the main crux of the whole matter. There are only two questions involved . . . one whether or not the City of Chicago has the right under the Acts to grant such a license or privilege or contract, secondly, . . . whether or not the lease in question gives you a right to run sightseeing planes there, that is that are not straight transportation. Those are your only questions."

Counsel for the respective parties acquiesced in the court's definition of the issues. Counsel for plaintiff did not then nor at any other time during the course of the hearing advise or suggest to the court that plaintiff's complaint presented any issue other than those outlined by the court. No attempt was made to correct the chancellor's understanding of the issues as announced by him. No effort was made to direct his attention to any right or interest alleged in the complaint distinct from and independent of plaintiff's claimed rights under the lease, that entitled it to ·the relief sought. It is strange, if plaintiff's complaint was predicated upon any right to relief other than that based on the lease and plaintiff's counsel was of that opinion, that said counsel did not assert such right as being in issue, as it was his duty to do, when the chancellor failed to include it in the issues as defined by him at the beginning of the trial. Plaintiff's counsel never took any other position before the trial court

than that plaintiff's claim for relief was predicated solely upon its rights under the lease. This is again evidenced by his statement to the court at the close of all the evidence, when, after saying, "I believe your Honor having read all the pleadings in the case is fully advised as to what is concerned in the petition," he then said: "The plaintiff takes the position that under the terms of his lease that the City of Chicago granted to him the right to carry on an air transportation business." We think the only reasonable interpretation this statement of counsel is susceptible of is that he meant that the court having read the pleadings and having a complete understanding of the issues, must necessarily have recognized that the rights claimed by plaintiff were solely under the lease.

A careful examination of the report of proceedings fails to disclose that plaintiff's counsel either requested or suggested that the trial court consider and determine any right to relief claimed by plaintiff under its complaint independent of and distinct from its claimed rights under the lease or that the court did consider and determine any such right. All the parties as well as the chancellor proceeded in the trial court on the theory that plaintiff was seeking relief solely on its claimed rights under the lease and plaintiff now seeks to inject an entirely new and different issue. The Supreme Court in its opinion, heretofore referred to, in its statement and analysis of the issues presented by the pleadings apparently did not discover the right and interest now claimed by plaintiff to have been alleged in its complaint. In its resume of the issues that court stated that "the real points in controversy are (a) the construction of appellant's lease, and (b) the right of the city of Chicago to grant an exclusive concession or license to appellee the Monarch Air Service, Inc., for air sightseeing purposes." It would be improper and highly unfair to the chancellor for a reviewing court to determine an issue that had not been

considered or determined by or even presented to the trial court. That an appellant seeking to reverse a decree will not be permitted to proceed on a theory in the reviewing court different from that adopted by him in the trial court requires no citation of authority.

Plaintiff's lease having admittedly been surrendered by him and canceled during the pendency of this appeal, the question as to its right to relief under the terms thereof has become moot. This is also true as to the questions concerning the authority of the City of Chicago to grant an exclusive concession to operate sightseeing planes from the Chicago Municipal Airport and the claimed violation of the provisions of the Civil Aeronautics Act of 1938, by reason of the grant of such exclusive concession. Plaintiff's claimed rights under the lease having been extinguished, it is no longer in a position to challenge the authority of the City of Chicago to grant the aforesaid contract to Monarch Air Service, Inc., or to question the compliance by the City of Chicago with the provisions of the Civil Aeronautics Act.

It has been repeatedly held that a reviewing court should not be called upon to decide questions that no longer exist, merely for the sake of making a precedent or of deciding a case to settle a simple matter of costs, even though when the action was instituted an actual controversy existed, a change in circumstances rendering the issues moot or abstract requires a dismissal of the appeal. *Wick v. Chicago Tel. Co.*, 277 Ill. 338; *People v. Sweitzer*, 329 Ill. 380; *Jones v. Clark*, 355 Ill. 527; *National Jockey Club v. Illinois Racing Commission*, 364 Ill. 630; *People ex rel. Jaros v. Jarecki*, 299 Ill. App. 382.

We have carefully examined and analyzed the allegations of plaintiff's complaint and are impelled to the conclusion that the only rights which it asserted therein were threatened and entitled to protection by way of injunction were its claimed rights under its lease.

The motion to dismiss plaintiff's appeal, which was reserved to hearing, is at this time allowed.

*Appeal dismissed.*

FRIEND, P. J., and SCANLAN, J., concur.