**GREATER WILMINGTON TRANSPORTA-TION AUTHORITY, a subdivision of the State of Delaware, Plaintiff,**

v.

**Bernard J. KLINE, d/b/a Diamond State Bus Lines, Inc. and/or Diamond State Bus Lines, et al., Defendants.**

Superior Court of Delaware, New Castle.

Dec. 15, 1971.

William D. Bailey, Jr., Wilmington, for plaintiff.

Alfred J. Lindh, Wilmington, for Bernard J. Kline.

## OPINION

O'HARA, Judge.

Plaintiff, a Transportation Authority created pursuant to Title 2, Delaware Code, Chapter 16, has initiated these proceedings under power of eminent domain to secure any right, title or interest that defendants might have in certain bus routes.

The record developed before trial in this action has clearly established that the only party claiming any present owner interest in the bus routes involved is Bernard J. Kline, d/b/a Diamond State Bus Lines (Kline). All the remaining defendants have either not appeared to contest this action or have indicated that their only interest is in the nature of tax liens or other fees due and payable to them by the owner. As a consequence, counsel for Kline and plaintiff have been able to stipulate as to certain facts and questions so as to present to the Court before trial the substantial issue of whether or not the bus routes involved are such a property right as would entitle the owner to just compensation as a consequence of eminent domain proceedings.

The record indicates that in January, 1964, Bernard J. Kline, Harry O. Kline, Sr. and Harry O. Kline, Jr. acquired all right, title and interest in the condemned

bus routes from certain third parties. The interests of Harry O. Kline, Sr. and Harry O. Kline, Jr. were subsequently transferred to Kline. As part of the above transactions, there is introduced into the record a memorandum agreement between Donald Lurty, predecessor in ownership, and Kline purporting to convey all right, title and interest of the former "to the Diamond State Bus Lines and its franchise operation" for a recited consideration of $300.00. In reference to this contract, there is testimony by Harry O. Kline, Sr. that the terms "all right, title and interest" was understood by the parties to contemplate the conveyance of a franchise for which substantial debts were assumed in addition to the recited consideration. The memorandum was approved by the Public Service Commission on December 7, 1966.

At the time of acquisition by the defendants the Diamond State Bus Lines was experiencing financial difficulty. Operation of bus service on all routes acquired by defendants began in February, 1964, and continued with minor exceptions, until February 1, 1969, when plaintiff took possession of the routes. During this period of approximately five years, losses totaled in excess of $30,000.00. Service routes were discontinued on two occasions where the lack of passengers warranted and on one occasion was extended pursuant to application under 26 Del.C. § 162. There is no evidence that defendants were ever refused any request to discontinue service on any particular route by the Public Service Commission.

The essential issue presented to this Court for adjudication is whether the interest of Kline in the aforementioned bus routes has the nature of constitutionally protected property right within the intendment of Article I, Section 8 of the Delaware Constitution, Del.C.Ann.

Kline asserts that he has a vested right to continue the operation of the Diamond State Bus Lines under the terms of 26 Del.C. § 162 * the deprivation of which right entitles him to fair compensation. A public utility as defined in 26 Del.C. § 101 includes every individual such as Kline who operates within this State a "motor bus" for public transportation. Kline contends that since § 162 requires the approval of the Public Service Commission only for new public utility businesses, and certain extensions, the conduct of existing utility businesses becomes by implication vested for those who can establish prior existing rights by contract or user. Kline conceives of his right to the bus routes as in the nature of a franchise, and accordingly directs the Court's attention to certain evidence which would indicate that it was understood as such by the Public Service Commission.

It is plaintiff's position that 26 Del.C. § 162 contains no statutory grant of authority rising to the dignity of a franchise, and that therefore in the absence of any vested

---

* 26 Del.C. § 162. Certificate of public convenience and necessity; when required

(a) Subject to the provisions of subsection (b) of this section and of sections 101, 121 and 122 of this title, no individual, copartnership, association, corporation, joint stock company, agency or department of the State, cooperative, or the lessees, trustees or receivers thereof, shall begin the business of a public utility nor shall any public utility begin any extension of its business or operations without having first obtained from the Commission a certificate that the present or future public convenience and necessity require or will require the operation of such business or extension. This section shall not be construed to require any public utility to secure such a certificate for any extension within or to any territory already served by it, or for any extension into a territory contiguous to a territory already served by it, and not theretofore served by a public utility of like character. The Commission, after hearing, on the complaint of any public utility claiming to be adversely affected by any proposed extension, may make such order and prescribe such terms and conditions with respect to the proposed extension as may be required by the public convenience and necessity.

rights conferred by Charter or otherwise, defendants are entitled to no compensation.

▬ As generally stated a franchise is a special privilege conferred by government on individuals, which does not belong to a citizen by common right. It is essential that a franchise should be created by a grant from the sovereign authority. 37 C.J.S. Franchises § 10; 17 Words and Phrases, "Franchise", p. 714; State ex inf. Shartel ex rel. City of Sikeston v. Missouri Utilities Co., 331 Mo. 337, 53 S.W.2d 394, Anno. 89 A.L.R. 607 (1932). At common law a franchise may owe its existence to prescription or long standing use, though this too presupposes a grant. Blue Bird Air Service v. City of Chicago, 376 Ill. 272, 33 N.E.2d 456 (1941). The granting of franchises to operate a public utility is an exercise of the legislative function of the sovereign, which may be delegated by statute to a duly designated agency or commission. 37 C.J.S. Franchises § 14. In the absence of a constitutional or statutory provision providing therefor, a public utility commission has no power to grant a franchise to a public utility. 73 C.J.S. Public Utilities § 42; Commissioners of Cambridge v. Eastern Shore P. S. Co., 192 Md. 333, 64 A.2d 151 (1949). The powers of the Public Service Commission of Delaware are entirely statutory. Smith v. Delaware Coach Co., 31 Del.Ch. 256, 70 A.2d 257 (1949).

Thus, it is of particular significance to inquire as to whether 26 Del.C. § 162 constitutes a legislative delegation to the Public Service Commission of its sovereign authority to grant franchises, or provides merely an incident to regulation. For in fact, if the former is the case the proprietary interest created must be compensated for upon its taking for public use. United States v. Puget Sound Power & Light Co., 147 F.2d 953 (9th Cir. 1944).

▬ This Court does not construe 26 Del.C. § 162 as statutory authorization for the granting of a franchise as to require compensation upon a taking for public use.

In general if the main object of a statute is regulation, a grant of authority or power which is merely incident to the implementation of that purpose does not contain authorization to create a franchise. The Public Service Commission of Delaware is essentially a regulatory body which performs certain legislative functions where specifically authorized by statute. 26 Del. C. § 127. Authority to grant franchises is not one of such delegated functions. Commissioners of Cambridge v. Eastern Shore P. S. Co., supra; Compare Delaware Coach Co. v. Public Service Com'n of State of Del., 265 F.Supp. 648 (D.C.Del. 1967).

The issuance of a certificate under 26 Del.C. § 162 is authorized only for the purpose of promoting the public convenience by means of restricting the number of buses to the needs of the public and is not for the purpose of conferring upon the holder of such certificate a proprietary interest in the public highways. Where the legislature has deemed to confer interests of a proprietary nature it has done so in explicit statutory grants. 26 Del.C. § 906, § 907. The inference drawn from the absence of such language in § 162 is that the legislature did not intend by this section to authorize the Public Service Commission to issue franchises to motor buses. Section 162 merely provides for the approval or license of the Public Service Commission as a condition precedent to the validity of franchises which might otherwise have been acquired by Charter or expressed statutory grant.

▬ Nor is the legislative determination limiting the authority of the Commission to the awarding of franchises only to those utilities mentioned in 26 Del.C. § 906, § 907 arbitrary or without reasonable basis. In fact, the inherent requirement in those industries for high initial capital outlay of a permanent nature dictates that for the protection of the public service company and consequent maintenance of service that the legal relationship between sovereign and company be framed in terms of a mutually

binding contract or franchise. Penn-York Natural Gas Corp. v. Maltbie, 164 Misc. 569, 299 N.Y.S. 1004 (1937). The absence of these particular conditions in the operation of a local motor bus carrier is a relevant distinction which obviates the need for anything more than a license. In this connection, the Court can take notice that the transportation company here was never under a compulsion to continue service on any bus route where it thought passenger demand did not warrant service.

A number of courts have considered the question of the nature of the interest transferred by the issuance of a certificate of convenience to a public utility. State ex rel. Hutton v. City of Baton Rouge, 217 La. 857, 47 So.2d 665 (1950); In re Application of Fort Crook-Bellevue B. Line, 135 Neb. 558, 283 N.W. 223 (1939); Cannonball Transp. Co. v. American Stages, 53 F. 2d 1051 (D.C.Ohio 1931). These courts, in accord with authorities elsewhere, acknowledge that there is a distinct difference between a certificate of public convenience and necessity and a franchise. A certificate of public convenience and necessity is in the nature of a personal privilege or license, which may be amended or revoked at will by the power authorized to issue it, and so does not rise to the dignity of a property right. Franchises, as a rule, spring from contracts between the sovereign power and private citizens for valuable consideration, and are not revocable at the will of the grantor in the absence of a reservation of right.

This distinction is best pointed out in the present context by the court in In re Application of Fort Crook-Bellevue B. Line, supra, wherein it is stated:

"The distinction between a franchise and a certificate of convenience and necessity is aptly made in Re St. Johns River Line Co., 1935, 7 P.U.R.,N.S., 268, as follows: 'A certificate of public convenience and necessity, however, is distinctly different from a grant of a franchise to use and occupy streets. The franchise to use and occupy streets is a grant of a limited property right for the use of public streets, while a certificate of public convenience and necessity is strictly a regulatory measure, and the granting or withholding of a certificate is an exercise of the power of the state to determine whether the rights and interests of the general public will be advanced . . .' "

This Court, therefore, necessarily concludes that a certificate of convenience and necessity is a mere license that can be amended or revoked at will by the grantor. Such being the case it is personal in its character, is not transferable and does not pass by succession. It is purely a regulatory measure that vests no right in the holder. Having adopted this conclusion, that the express permission of the Commission to use the highways does not constitute a property interest, even when acted upon, it logically follows, a fortiori, that interests premised by implication on the continuation of pre-existing highway use without expressed permission are not of a proprietary nature. Oklahoma Gas & Electric Co. v. Wilson & Co., 146 Okl. 272, 288 P. 316, (Supr.Ct.1939). (Expressed permission of sovereign required). Blue Bird Air Service v. City of Chicago, supra; 37 C.J.S. Franchises § 10.

For the reasons herein stated, the Court concludes, therefore, that defendant Kline is not entitled to compensation.

It is so ordered.