TAMIAMI TRAIL TOURS, INC., v. RAILROAD COMMISSION OF THE STATE OF FLORIDA AND COAST TO COAST SYSTEM, INC.

163 So. 1.
Opinion Filed July 5, 1935.
Petition for Rehearing Denied August 2, 1935.

A. *Pickens Coles,* for Petitioner;

*Stanton Walker* and *T. T. Turnbull,* for Respondents;

*Waller & Pepper,* for Elliott-Young Consolidated, Intervener.

DAVIS, J.—This is an original certiorari proceeding brought against the Florida Railroad Commission for the purpose of quashing an alleged illegal order entered by that tribunal purporting to act in accordance with the jurisdiction conferred upon it by Chapter 14764, Acts 1931, Section 1335 (1), *et seq.,* C. G. L. 1934 Supplement, having reference to motor vehicular common and private contract carriage of goods and passengers over Florida highways pursuant to certificate of public convenience and necessity issued therefor.

As summarized by counsel representing the respondents in this case, the factual background of this controversy is as follows:

Coast to Coast System, Inc., is a certificated common carrier of freight operating on various roads of the State of Florida. One of its operations is from Jacksonville to Miami over State Road No. 4. It also operates between Tampa and Daytona Beach over State Roads Nos. 17, 2, 3 and 21. It actually operates over this route under a lease

originally obtained from Strickland Transportation Company, but as a matter of fact, the stockholders of Coast to Coast System, Inc., in reality own this Certificate although no approval of the transfer to Coast to Coast System, has been sought nor given by the Railroad Commission. The operation is daily, except Sunday, schedules being over both of these routes—Jacksonville to Miami—and—Tampa to Daytona Beach.

On its Jacksonville to Miami operation the carrier serves Melbourne, Cocoa, Titusville, New Smyrna and all points south of Daytona Beach. On and by means of its operation between Tampa and Daytona Beach it serves Kissimmee. From Kissimmee there is a hard surfaced highway—State Road No. 24—running through St. Cloud and Holopaw on to Melbourne. The Star Truck Line and the St. Johns River Line Company operate into St. Cloud but go no further on this road, and no auto transportation company operates over State Road No. 24, between St. Cloud and Melbourne.

The Coast to Coast System, Inc., filed with the Commission Time Table No. 1, Schedule No. 11, by which it proposed to operate from Kissimmee to Melbourne and return, alleging that it was so proposed in order to expedite its service from Tampa to the East Coast territory which it now serves on its line from Jacksonville to Miami, and also from Tampa via Daytona Beach.

The Railroad Commission set the matter down for hearing in due course. At the hearing a witness for the Coast to Coast System, Inc., described the affected service as follows:

"The distance from Kissimmee to Daytona and from Daytona back to Melbourne is 170 miles; and, by this application, we can move the freight on that schedule south of

Kissimmee through Kissimmee and in to Melbourne over Highway No. 24, on the regular schedule moving out of Tampa through Kissimmee and by connecting up with our southbound schedule out of Jacksonville at Daytona Beach and Melbourne, to southern east coast, speed up our deliveries one day. This will mean that the traffic will be handled 116 miles less than it is handled at the present time, and mileage taxes which we pay to the State will be increased 108 miles a day, except Sunday.

"We do not seek any new territory under this application. The traffic which is offered at the present time for points down the east coast moves out of Tampa in the evening and gets to Daytona after the southbound truck has passed Daytona going south, and the best service we are able to offer at the present time is second morning delivery. Under this operation, this freight would either be transferred, or, if the traffic will warrant it, operate it as a second section out of Tampa, and go across from Kissimmee to Melbourne, and make the same connection out of Jacksonville, which is the same day, and offer the next morning delivery into the southern part of the State.

"There is no other transportation company at the present time, so far as we know, that is offering this service to the public."

After a full hearing, at which time petitioner, Tamiami Trail Tours, Inc., was represented and gave testimony, the Commission approved the schedule, and in order to carry out this schedule authorized Coast to Coast System, Inc.:

" * * * to operate over State Highway No. 24, between Kissimmee and Melbourne, for the purpose of making more expeditious delivery of merchandise from Tampa to its numerous patrons along the east coast of Florida."

It is claimed by the Commission that the granting of the

right to operate over State Highway No. 24, was merely incidental to expediting the existing service by authorizing the proposer to inaugurate an improved schedule as between Tampa and Melbourne and to connect two points already served by the carrier. The Coast to Coast System, Inc., already was exercising the right to serve Tampa and Melbourne and all points involved in this proceeding, and was operating what was in fact a through service from Tampa to Miami via Daytona Beach, Titusville, Melbourne and points along State Road No. 4.

The record supports the contention that often Coast to Coast System, Inc., would originate full truck loads of freight destined from Tampa to Melbourne and points south of Melbourne and would run said truck loads of freight in through Carriage as a second section of its scheduled operation from Tampa to Daytona Beach and points south.

The difficulty which the new schedule proposed to overcome was the necessity of holding these full truck loads at Daytona Beach for twenty-four hours and run them as second sections on this schedule, on account of a co-ordinating schedule controlling the dispatch of traffic between Miami and Jacksonville. The present order was entered to correct the foregoing difficulty and to expedite the service, so the respondents Railroad Commission and Coast to Coast System, Inc., contend, while the petitioner objects to it on the ground that, stripped of its pretended formalism, it amounts in substance to the granting of a certificate of public convenience and necessity for a new service which is not attempted to be justified as such by the record before the Railroad Commission.

The following map (with accompanying key) will show at a glance, the effect of the Railroad Commission's order under attack, insofar as it changes the flow of traffic from

Tampa to Miami, via motor lines operated or controlled by Coast to Coast System, in competition with Tamiami Trail Tours, Inc., Tampa, via Fort Myers to Miami:

KEY
┼┼┼┼ Coast to Coast System, Inc.
▬▬▬ 'Tamiami Trail Tours, Inc.
▬ ▬ ▬ New Operation in Dispute
(Coast to Coast System)
〰〰 St. Johns River Line

, EXPLANATION.—Coast to Coast Tours traffic now moves from Tampa to Daytona Beach thence to Miami via Melbourne with lay-over one day at Daytona Beach.

New Schedule and route permits Coast to Coast traffic to move from Tampa to Melbourne via Kissimmee, thence to Miami.

Tamiami Trail Tours, Inc., the petitioner-objector in this proceeding, operates as a certificated common carrier of freight between Tampa and Miami *via* Fort Myers. As will be seen from a casual inspection of the map hereinbefore reproduced as a part of this opinion, Tamiami Trail Tours, Inc., under its own certificate as it existed prior to the beginning of this controversy, enjoyed a distinct advantage with reference to haulage of goods from Tampa to

Miami on the short route available to it *via* Fort Myers
and the Tamiami Trail.

As opposed to advantages of the short and expedited service afforded to Tampa patrons by Tamiami Trail Tours,
Inc., were the handicaps and disadvantages of the Tampa
to Miami service being carried on by Coast to Coast System, Inc., which latter carrier was by virtue of its particular certificated operation, unable to transport freight
from Tampa to Miami except by first hauling it from Tampa
*via* Kissimmee to Daytona Beach and thence down the east
coast from Daytona Beach *via* Melbourne to Miami.

So the obvious objective sought to be attained by Coast to
Coast System, Inc., is petitioning the Railroad Commission
for leave to inaugurate a new haulage operation from
Tampa to Miami *via* Kissimmee, Holopaw and Melbourne
to Miami, was to neutralize, if not to destroy entirely, the
competitive advantage at that time possessed by Tamiami
Trail Tours, Inc., in the service it was already affording to
Tampa-Miami traffic through the medium of its certificated
service from Tampa to Miami *via* Fort Myers and Tamiami
Trail.

So the question naturally arising out of the challenged
order of the Railroad Commission approving the petition
of Coast to Coast System, Inc., for a new service privilege
from Tampa to Miami *via* Kissimmee, Holopaw and Melbourne that had not theretofore been enjoyed by, or been
certificated to, petitioner, Coast to Coast System, Inc., is
whether or not the Railroad Commission at the time of its
order, had statutory authority, in view of the limitations
imposed upon it by Section 3 of Chapter 14764, Acts 1931,
Section 1335 (3) C. G. L., 1934 Supplement, to enter an
order so altering and enlarging the service privileges of
Coast to Coast System, Inc., under its existing certificate of

public convenience and necessity, as to amount to a grant of authority for an entirely new service between Tampa and Miami, without inquiry and proof before such Railroad Commission that *public* convenience and necessity, as well as the carrier's convenience and necessity, required such extension and enlargement of privilege for the benefit of Coast to Coast System, Inc., operating between Tampa and Miami, despite the fact that the change might work to the possible prejudice and detriment of Tamiami Trail Tours, Inc., as a competing motor carrier engaged in the performance of an identical service between Tampa and Miami, the common terminal points?

Section 3 of Chapter 14764, *supra,* provides among other things, as follows:

"Application for such Certificate of Public Convenience and Necessity for common carriage made by any auto transportation company shall be in writing verified by the applicant and shall specify the following matters: * * *

"3. The kind of transportation, whether passenger or freight, or both, in which applicant intends to engage, together with a brief description of each vehicle which applicant desires to use, including the seating capacity thereof, if buses, or the tonnage thereof, if trucks, and including specifically the size and weight of such vehicle. * * *

"5. An agreement on the part of the applicant to conform with and abide by all tariffs and classifications as to freight or passenger carriages which may be prescribed by the Commission from time to time.

"Any such application shall be accompanied by payment of a fee of Fifty Dollars to be placed in the general fund of the Railroad Commission and applied to the cost of notices and hearings and for the administration of the provisions of this Article.

"Upon filing of said application and payment of said fee, the Railroad Commission shall fix a time for hearing said application, which shall not be less than twenty days nor more than sixty days subsequent to the filing of said application, and no application shall be granted or certificate of convenience and necessity issued without a hearing by the Railroad Commission. Notice of such hearing shall be given to the applicant and to all transportation companies serving any part of the route proposed to be served by the applicant, and to the Mayor or Chief Magistrate of each city and town in or through which the applicant desires to operate, and to the Chairman of the Board of County Commissioners of each county in which the proposed service would be operated, and to the Chairman of the State Road Department. Such notices shall contain a brief summary of the subject matter of the application, the type of service proposed, the territory to be served, and any other pertinent facts in connection therewith, and shall be mailed at least fifteen days prior to the date assigned for hearing of such application and shall within such fifteen day period be published by the Railroad Commission in one or more newspapers of general circulation in the territory proposed to be served."

In the interpretation and enforcement of the Certificated Motor Vehicular Carriage Act (Chapter 14764), we have recently held in Central Truck Lines, Inc., v. Railroad Commission, 118 Fla. 555, 160 Sou. Rep. 26, that:

"An order of the Railroad Commission, made in its capacity as an agency of the Legislature for the purpose of administering the provisions of Chapter 14764, Acts of 1931, with reference to the granting, denial and regulation of the privilege of using the public highways for profitable motor carriage by motor transportation companies and

others who may apply for such privileges, must, like a statute be tested by its practical operation and effect rather than by its form when called in question in the courts as amounting to an unauthorized invasion of the rights of a party complainant against the same. In such cases the law regards neither the name, designation or form of the order as being the material thing, but tests the order's validity by what may appear to be its practical operation and effect as put into force, applied, and carried out under the circumstances complained of as being violative of law. * * * This is true, notwithstanding the fact that the order may have had its inception in a petition purporting to pray for a *mere administrative order* formally approving as reasonable the constituent details of a new operative schedule proposed for future application to traffic already moving under an appropriately certificated operation." (Emphasis supplied.)

A bare inspection of the Coast to Coast System, Inc.'s application upon which the order attacked in this case was predicated, discloses that such application was not verified, nor did it contain a brief description of each vehicle which applicant desired to use, nor the tonnage thereof, nor was the size or weight of the vehicles proposed to be employed in the service designated. Absent also was the required statutory agreement on the part of the applicant to conform to and abide by all tariffs and classifications as to freight, which might be prescribed by the Railroad Commission from time to time, nor was such application accompanied by the required statutory fee of fifty dollars. Notices of the application were likewise omitted insofar as compliance with the terms of the statute is concerned. So the application and resultant order, not having been inquired into nor arrived at by the Railroad Commission in accordance with Section 3 of Chapter 14764, *supra,* must go down before

petitioner's assault if the substance of what was applied for be determined to be in legal effect the inauguration of a new and different common carrier service between Tampa and Miami, and not (as claimed in defense of it) a mere administrative change of schedule and route as to one already existing. Compare: Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1631, 131 Sou. Rep. 777, and St. Johns River Line case, 118 Fla. 555, 160 Sop. Rep. 26, with the case of Central Truck Lines, Inc., v. Railroad Commission, 109 Fla. 395, 147 Sou. Rep. 590.*

At the hearing petitioner's application was described as an application to secure an extension of Coast to Coast System, Inc.', certificate No. 52 so as to permit an operation under such certificate between Kissimmee and Melbourne with closed doors, for the purpose of making closer connection between the east coast and Tampa; that the distance from Kissimmee to Daytona and Daytona back to Melbourne was 170 miles, whereas by moving traffic originating for the east coast south of Kissimmee through Kissimmee and into Melbourne over State Highway No. 24, there would be a saving of 116 miles representing the difference in distance required to be traveled in order to move a shipment from Kissimmee to Melbourne *via* the Holopaw route as compared with the Daytona route.

There is little doubt about the proposition that the change authorized by the Commission will redound to the great benefit and convenience of Coast to Coast System, Inc., as

---

*In Central Truck Lines v. R. R. Commission, 147 Sou. Rep. 590, just cited, this Court held that where there is a mere change in schedule from an unreasonable to a reasonable one applied for by a carrier, the effect of Section 8 of Chapter 14764 was to empower the Railroad Commission to approve the change without reference to the effect thereof upon other transportation companies.

a certificated motor carrier, in the handling of its Tampa to Miami and east coast shipments, and that it will likewise be for the greater convenience of those shippers who elect to favor it with their patronage, although there is a more direct and expeditious service available at the hands of a competing carrier.

But since the service proposed on the new route was admittedly projected by Coast to Coast System, Inc., as a "closed door," operation between Kissimmee and Melbourne, and the Railroad Commission in paragraph 4 of its order No. 717 (Docket No. 100-11) expressly so limited it (with the exception of leave to serve Holopaw) it is evident that practically the only scope of the order is to bring into existence between Tampa and Miami a new, shorter and more expeditious motor transport service to be carried on by Coast to Coast System, Inc., between Tampa and east coast points (including Miami), in competition with the already existing presumably adequate service of Tamiami Trail Tours, Inc., and that the real effect of such order is not merely to readjust, as an administrative matter within the Railroad Commission's discretion under Section 8 of the Act, an existing schedule of an already authorized service between the same termini and over the same route. This is so because the existing service of the applicant comprehended a service extending a much longer distance and for the most part over an entirely different system of roads.

Therefore, since no attempt is made by Coast to Coast System, Inc., to justify the legality of the application here involved as having been lawfully heard and considered by the Railroad Commission in the manner and form contemplated by Section 3 of Chapter 14764—Section 1335 (3), 1934 C. G. L. Supplement, and since the order under attack was sought, and is herein attempted to be justified, solely on

the contention that it is a legally authorized and casually made administrative schedule change under Section 8 of said Chapter 17764, supra,* the order here brought in controversy must be held invalid and quashed as in substance and effect an order unlawfully granting to Coast to Coast System, Inc., a certificate of public convenience and necessity for a new service that can only be granted after due notice and hearing as required by Section 3 of Chapter 14764, supra, as a condition precedent to the Railroad Commission's exercise of jurisdiction in the premises. See: Seaboard Air Line Ry. Co. v. Wells, 100 Fla. 1651, 131 Sou. Rep. 777.

As has been pointed out, the operation sought was wholly a "closed door" one over the new route, with the exception of service at Holopaw, which latter service the Commission of its own motion authorized and incorporated in its order. So the direct effect of the order here brought in issue, is to materially affect and invade the existing rights of Tamiami Trail Tours, Inc., under its certificated service to Miami from Tampa, without an investigation and finding by the Railroad Commission that some *public* convenience and necessity requires such new arrangement to be authorized, as distinguished from the *private* convenience of the Coast to Coast System, Inc., and those particular shippers who elect to use a longer route requiring more time in preference to a more direct route requiring less time.

Every certificate of public convenience and necessity that the Railroad Commission is authorized to grant under the law is, in most cases in its last analysis, a statutory license to enjoy a protected public monopoly out of whatever motor

---

*Which latter class of order requires no special inquiry, investigation or finding by the Railroad Commission as to public convenience and necessity for the proposed change.

transportation business is to be derived by the certificate holder out of its servicing the authorized route and terminal points designated in such a certificate when issued.

The statute (Chapter 14764, Acts 1931), contemplates that whatever advantage may have been originally conferred on Tamiami Trail Tours, Inc., by its own certificate of public convenience and necessity when it was authorized to serve Miami by the haulage of goods from Tampa to Miami *via* Fort Myers, should not be divested nor otherwise prejudiced on any less consideration than an affirmative showing before the Railroad Commission as a state agency, that the real convenience and necessity of the "public," whose interest is paramount in such cases, demands the granting of a new service that will tend to impair the existing competitive advantage enjoyed by Tamiami Trail Tours, Inc., by reason of the directness of its own certificated route and the expedition of its service, as it had been already licensed. The effect of the application by Coast to Coast System, Inc., was inevitably to invade, if not entirely destroy that advantage by having authorized through the Railroad Commission, a competitive routing materially the equivalent in time and distance between the affected termini (Tampa to Miami) to that already granted to Tamiami Trail Tours, Inc. (*via* Fort Myers). When Tamiami Trail Tours, Inc., was granted its certificate of public convenience and necessity for the Tampa to Miami, *via* Fort Myers route, it was accorded the valuable rights inherent in such a certificate, in consideration of the latter's investing its money and embarking upon a public venture. The effect of its acceptance of the special franchise thus granted as a valuable privilege, is legally to require it to operate its regular schedules, whether profitable or not, so long as it

dedicates its properties to the public service comprehended within its operations as certificated.

The order of the Railroad Commission is quashed, but without prejudice, however, to the authority of the Railroad Commission to appropriately receive, hear and decide a proper application by Coast to Coast System, Inc., for the award of a certificate of public convenience and necessity in the manner and form, and subject to the conditions prescribed by law, as set forth in this opinion.

. Order quashed.

WHITFIELD, C. J., and ELLIS, TERRELL, BROWN and BUFORD, J. J., concur.