405 So.2d 456 (1981)
ALTERMAN TRANSPORT LINES, INC., et al., Appellants,
v.
STATE of Florida, Appellee.
No. WW-391.
District Court of Appeal of Florida, First District.
October 20, 1981.
*457 Barry Richard, of Roberts, Miller, Baggett, LaFace, Richard & Wiser, and M. Craig Massey, Tallahassee, for appellants.
*458 Jim Smith, Atty. Gen., and John Rimes, Asst. Atty. Gen., for appellee.
James E. Wharton, Orlando, for intervenors-appellants.
Bernard C. Pestcoe and Michael T. Greif, of Baskin & Sears, Miami, for Florida Movers & Warehousemen's Ass'n, Inc., and Capital City Moving & Storage Co., Inc.
Robert M. Rhodes and H. Michael Madsen, of Messer, Rhodes, Vickers & Hart, Tallahassee, for intervenors-appellees Central Florida Bus Lines, Inc., and Florida Ass'n of Passenger Carriers, Inc.
PER CURIAM.
Appellants, primarily motor carriers holding certificates of public convenience and necessity issued by the Florida Public Service Commission pursuant to Chapter 323, Florida Statutes, seek review of a final judgment which dismissed with prejudice appellants' complaint challenging the constitutionality of the "Sunset Act"[1] as it pertained to deregulation of intrastate motor carriers and the trucking industry. We affirm.
The regulatory Reform Act of 1976 (commonly known as the "Sunset Act"), which became effective June 17, 1976, repealed a number of regulatory statutes staggered over a four-year period beginning July 1, 1978. The act also provided that within one year prior to the date that the regulatory statute was to stand repealed, the Legislature was to review the regulatory statute to determine whether it should be reestablished.
Included in the schedule of regulatory statutes scheduled to expire on July 1, 1980, was Chapter 323 et seq., Florida Statutes, the motor carriers and freight forwarding act, by which the Public Service Commission had been granted regulatory authority over intrastate motor carriers. The 1980 session of the Florida Legislature failed to reenact Chapter 323. Instead, during that session, the Legislature enacted Chapter 80-298, Laws of Florida, which transferred to the Department of Transportation certain Public Service Commission employees charged with enforcing motor carrier regulations and which authorized the Department of Transportation to promulgate and enforce weight and safety regulations applicable to intrastate motor carriers.
The initial complaint was filed by Alterman Transport Lines, Inc., a corporation, and 11 other motor carriers, all of whom held certificates of public convenience and necessity under Chapter 323, Florida Statutes, and each of whom were engaged in the commercial transportation of persons and goods within the State of Florida. Also joining as plaintiff was Tropitone Furniture Co., Inc., a non-motor carrier, engaged in a business wholly dependent on and regularly utilizing the services of intrastate motor carriers. The complaint alleged in substance that each of the plaintiff motor carriers, by virtue of their respective certificates of public convenience and necessity, had a statutory right to seek redress in the courts against one who, without possessing such a certificate, sought to compete against a certificate holder, and that the plaintiff "consumer" likewise had a statutory right to protest the issuance or transfer of any certificate or to protest a change of rate or schedule, with redress to the courts for any injury caused by a carrier's failure to comply with the provisions of Chapter 323, Florida Statutes; thus, it was alleged, the repeal of Chapter 323 had the effect of depriving plaintiffs of the right of access to the courts in violation of Article I, Section 21, Constitution of Florida (1968).
Gator Freightways, Inc., a corporation, and four other corporations were permitted to intervene as plaintiffs, challenging the constitutionality of the Sunset Act as it related to the repeal of Chapter 323, on several other grounds, some of which have been argued on this appeal. Upon motion of the state, and others who had been allowed to intervene as defendants, the court determined that neither the original complaint as amended, nor the complaint filed by the intervenors, stated any facts or legal theories under which the legislative repeal *459 of Chapter 323, Florida Statutes, would be unconstitutional; it therefore dismissed the complaints with prejudice.
Appellants, consisting of the original plaintiffs together with the intervening plaintiffs, have raised six points on this appeal: (1) the repeal of Chapter 323 denies appellants access to the courts contrary to Article I, Section 21, Florida Constitution; (2) the repeal of Chapter 323, effective July 1, 1980, operates to take from appellants valuable property rights without due process or just compensation, or operates to impair valid existing contracts between appellants and the state, all in violation of the constitutions of the State of Florida and the United States; (3) Chapter 323 was, in fact, reenacted by Chapter 77-434, Laws of Florida; (4) the Regulatory Reform Act of 1976 was an invalid attempt by the 1976 Legislature to bind subsequent legislatures; (5) Chapter 76-168, Laws of Florida, violated Article 3, Section 6, Florida Constitution, relating to title; and (6) the repeal of Chapter 323 subjects appellant motor carriers to the penalties of the antitrust statutes. Although none of these points require reversal, several merit discussion.
Appellants first contend that the repeal of Chapter 323, and specifically Section 323.24, Florida Statutes, abridges their right of access to the courts to seek injunctive relief and damages for interference with their routes established by certificates of public convenience and necessity, in contravention of Article I, Section 21, of the Florida Constitution, which provides as follows: "The courts shall be open to every person for redress of any injury, and justice shall be administered without sale, denial or delay." (emphasis supplied)
In support of this argument, appellants rely primarily on Kluger v. White, 281 So.2d 1 (Fla. 1973).
It is our view that the deprivation of appellants' privilege to be immune from competition is not the type of injury protected by Kluger and its progeny. Appellants have not been denied entry into the market, nor have they been prohibited from exercising their competitive rights. Their "injury", if any, is competition in the market place.
To define competition as an "injury" within the context of Article I, Section 21, would be in direct contravention of public policy, a result to which this court cannot and should not subscribe. Certainly Kluger cannot be elevated to thwart this state's public policy.
Even if exposure to competition could be deemed a protected "injury", we still find no such constitutional infirmity in the repeal of Chapter 323. No substitute remedy need be supplied by legislation which only reduces but does not destroy a cause of action. Jetton v. Jacksonville Electric Authority, 399 So.2d 396 (Fla. 1st DCA 1981). Nor does the elimination of one possible ground of relief require the Legislature to provide some replacement. Estate of Roberts, 388 So.2d 216 (Fla. 1980). The repeal of Chapter 323 leaves intact appellants' common law remedies in tort, nuisance and contract. Further, the Legislature has provided numerous statutory remedies to protect the appellants' interest. Chapter 501, Florida Statutes, addresses unfair and deceptive trade practices. Appellants are protected from predatory price discrimination by Chapter 540 and from combinations in restraint of trade by Chapter 542. In view of this impressive and varied array of alternative remedies, we conclude that the repeal of Chapter 323 does not deny appellants access to the courts of this state.
Appellant carriers also argue that the repeal of Chapter 323 unconstitutionally deprives Florida consumers of their access to the courts to bring suit to stop the abandonment of unprofitable routes or to challenge the setting of motor carrier rates. However, carriers previously regulated by Chapter 323 had no standing to raise such issues. See State v. Philips, 70 Fla. 340, 349, 70 So. 367 (1915). Therefore, they cannot claim to have been deprived of a right of access which they never had. As regards plaintiff Tropitone, it still has, as do all consumers, the right of access to the courts under Chapters 501, 504 and 542 and as *460 always, they have the right to refuse the use of the motor carriers if their rates are found to be excessive or for any other reason.
Appellants next contend that the repeal of Chapter 323 impairs valuable contractual rights. "Every certificate of public convenience and necessity ... is, in most cases in its last analysis, a statutory license to enjoy a protected public monopoly." Tamiami Trail Tours, Inc. v. Railroad Commission of Florida, 120 Fla. 371, 163 So. 1, 6 (1935). As such a certificate of public convenience and necessity is akin to a liquor license, which is in effect a quasi-monopolistic license by reason of the limitations representing the number and location of liquor stores and the conditions under which they are operated. We recognize that liquor licenses, much like certificates of public convenience and necessity, have the quality of property with an actual pecuniary value, both real and for taxable purposes, in excess of their stated cost. House v. Cotton, 52 So.2d 340 (Fla. 1951). Despite these qualities, the courts of Florida have consistently held that a liquor license is not a contract, e.g., State ex rel. First Presbyterian Church v. Fuller, 136 Fla. 788, 187 So. 148 (1939); House v. Cotton, supra; Leafer v. State, 104 So.2d 350 (Fla. 1958), nor is it property in a constitutional sense. First Presbyterian Church, supra; Yarbrough v. Villeneuve, 160 So.2d 747 (Fla. 1st DCA 1964). Indeed, it has been held that a liquor license can be subjected to further regulation or even revocation, at the pleasure of the legislature. Davidson v. City of Coral Gables, 119 So.2d 704, 709 (Fla.3d DCA 1960). So, too, must we regard a certificate of public necessity. Since a certificate is not property in any constitutional sense and conveys no vested interest, it is at all times revocable at the will of the people of Florida, as expressed by and through their elected representatives. We note that several other states have reached similar conclusions. See Greater Wilmington Authority v. Kline, 285 A.2d 819 (Del.Sup.Ct. 1971); In Re Application of Ft. Crook-Bellevue B. Line, 283 N.W. 223 (Neb. 1939). To paraphrase a biblical quotation, that which the the legislature giveth, so may it taketh away.
As to appellants' third Point, we find that Chapter 323 was not reenacted by Chapter 77-434, Laws of Florida. While Chapter 77-434 made numerous amendments to Chapter 323, we find the legislature did not intend to completely rewrite or revise the trucking regulatory statutes as envisioned by the "Sunset Act". In fact, we find the contrary intent expressed by the same legislature. Chapter 77-457, Laws of Florida, amended the "Sunset Act" again, repealing Chapter 323, effective July 1, 1980.
Statutes relating to the same subject matter passed during the same legislative session should be construed together and harmonized so as to give effect to each. Tamiami Trail Tours v. City of Tampa, 31 So.2d 468 (Fla. 1947). As the court stated, in Oldham v. Rooks, 361 So.2d 140 (Fla. 1978), at p. 143:
There is a general presumption that later statutes are passed with knowledge of prior existing laws, and a construction is favored which gives each one a field of operation, rather than have the former repealed by implication. [citations omitted]
Applying the above authority to the facts before us, we find the amendments to Chapter 323 were intended to be effective until repeal of Chapter 323 on July 1, 1980, or until legislative reenactment of Chapter 323.
Regarding appellants' fourth Point, we find no impermissible attempt by the 1976 Legislature to bind subsequent legislatures. Even had the 1976 Legislature sought to bind subsequent legislatures, a subsequent legislature still could have rescinded the statute. Chapter 76-168, which provided that Chapter 323 was repealed effective July 1, 1980, was not advisory. Had a subsequent legislature wished to change the repeal date, it could have done so. It did not. Therefore, Chapter 323 was repealed on July 1, 1980.
*461 Appellants next contend that the titles of Chapter 76-168 and Chapter 77-457 contravene the requirements of Article III, Section 6, Florida Constitution. We find no constitutional infirmity in the titles of the acts. Article III, Section 6, states: "Every law shall embrace but one subject and matter properly connected therewith, and the subject shall be briefly expressed in the title... ." This provision imposes two related but distinct requirements. First, the title of the bill should be fair notice of its contents. Second, the various provisions of the bill must be germane to the subject as expressed in the title. Sutherland, Statutory Construction, § 17.01 (4th Ed. 1972). These requirements are designed to prevent surprise or fraud that would spring from hidden provisions not indicated in the title. Knight & Wall Co. v. Bryant, 178 So.2d 5 (Fla. 1965), cert. denied, 383 U.S. 958, 86 S.Ct. 1223, 16 L.Ed.2d 301 (1966). The subject of an act may be as broad as the legislature chooses provided the matters included in the law have a natural and logical connection. Board of Public Instruction of Broward Co. v. Doran, 224 So.2d 693 (Fla. 1969). The proper test is whether the title is worded so as not to mislead a person of average intelligence as to the scope of the law and whether it is sufficient to put that person on notice and cause him to inquire into the body of the statute itself. Williams v. State, 370 So.2d 1143 (Fla. 1979).
In order to comply with the requirement that the subject of a law be briefly expressed in the title, the title need not be an index of all the features of the legislation. A general statement of the subject is all that is required; indeed, a brief, general statement is preferred over a detailed listing. [citations omitted]
City of Pensacola v. Shevin, 396 So.2d 179, 180 (Fla. 1981).
The relevant portions of the title to Chapter 76-168, Laws of Florida, reads as follows:
An act relating to legislative review of programs and functions which regulate a profession, occupation, business, industry and other endeavors; repealing various chapters and sections of the Florida Statutes, relating to such programs and functions; providing for periodic legislative review, modification and re-establishment of such programs and functions... .
A reading of the title gives fair notice that the act deals with review of programs and functions which regulate a profession, occupation, business, industry and other endeavors. It also gives notice that certain sections of the Florida Statutes which regulate the various professions will be repealed. We find that reasonable persons would be put on notice by the title of the act and thus would inquire whether the regulations governing their profession or occupation were affected by the act.
Even if the title to the acts could be held defective, any infirmities or defects in the title were cured when the acts were reenacted into the Florida Statutes. See Section 11.61, Florida Statutes (1979).
The rule in Florida is that all infirmities or defects in the title of a reenacted statute are cured by reenactment; and this is true whether the statute has been previously declared inoperative or not.
Belcher Oil Co. v. Dade County, 271 So.2d 118, 121 (Fla. 1972). Accordingly, we find no title defect in the legislation now under attack.
On this point, appellant also urges that the "Sunset Act" is invalid because it depends on other laws for its effectiveness, citing as authority Auto Owners Insurance Co. v. Hillsborough County Aviation Authority, 153 So.2d 722 (Fla. 1963). The cited cases held that an act which amended a previous act must also contain the original language of the act being amended. The case is inapplicable. The "Sunset Act" did not amend Chapter 323, it repealed it.
Appellants' sixth Point that by returning motor carriers to the common law they are being forced to violate Florida's anti-trust statutes, is without merit and needs no discussion.
The judgment is AFFIRMED.
*462 McCORD, J., LILES, WOODIE A. (Retired) Associate Judge, and OWEN, WILLIAM C., Jr., (Retired) Associate Judge, concur.
NOTES
[1] Chapter 76-168, Laws of Florida, as amended by Chapter 77-457, Laws of Florida.