# DADE AMBULANCE SERVICE, INC. v METROPOLITAN DADE COUNTY

Case No. 85-41578

Eleventh Judicial Circuit, Dade County

April 1, 1986

## APPEARANCES OF COUNSEL

**Robert A. Ginsburg,** County Attorney, and **R. A. Cuevas, Jr.,** Assistant County Attorney, for defendants.

**Stuart L. Simon** for plaintiffs.

## OPINION OF THE COURT

RICHARD S. FULLER, Circuit Judge.

Dade Ambulance Service, Inc. (DAS) applied to Dade County for a certificate of public convenience and necessity to operate 12 ambulances. A public hearing was held on the application before the County Commission. At the conclusion of the hearing, the Commission determined to deny the application. This action ensued.

The issue was raised as to the proper procedure for review of the

County Commission's decision. DAS sought mandatory injunctive relief to compel issuance of the requested certificates. The County contends that any review by this Court should be by means of the appellate process.[1]

The Court requested and received the minutes and the transcript of the public hearing before the County Commission on this matter. Copies of the Commission's written resolution denying the application and the County Manager's report were appended to the Complaint.

As a result of the public hearing and the Manager's report, the Commission

> . . . determined that the need for the proposed service cannot be demonstrated at this time, and that the public interest will be best served by denying the application. . . .

The City Manager's report contained an analysis of the existing emergency transportation system. The analysis indicated that with regard to existing service, the type and number of complaints, especially relating to response time, had been minimal and that virtually no complaints were received relating to private clients. At the public hearing, an Assistant County Manager advised the Commission that in a prior survey staff could not find any hospital that actually needed the advanced life support (ALS) service DAS sought to provide. The Court finds the foregoing constitutes substantial competent evidence to support the Commission's determination that there is no present need for additional service.

DAS further complains that, while it received notice of the County Commission's public hearing, no notice thereof was given to its counsel. A principal officer of DAS appeared before the County Commission at the public hearing and present evidence and argument in support of the application. He did not advise the Commission that DAS was represented by counsel or that DAS wished a deferral so that counsel could present the application. The transcript of the public hearing demonstrates that DAS was given a full and fair opportunity to present its application to the County Commission.

DAS further claims that the County ordinance contains too vague a standard of need for issuance of ambulance certificates. As relates to need, the ordinance (Sec. 4-28 of the Dade County Code) requires the Commission to consider:

---

[1] A question as to the timeliness of the Complaint was also raised. A review of the court file indicates that the Complaint was filed on the thirtieth day after the date of the Commission's decision. The Court therefore finds the Complaint was timely.

The effect that the granting of such certificate may have upon overall ambulance service available to the people of Dade County. . . .

*Florida Motor Lines v. State Railroad Comm'n*, 132 So. 2d 851, 858 (Fla. 1931), arose out of the issuance of a certificate of public convenience and necessity to provide additional transportation services. Like the ordinance in issue, the governing statute provided that the Railroad Commission could:

. . . take into consideration . . . the effect that the granting of such certificate may have . . . upon transportation as a whole within the territory. . . .

While noting the "rather general provisions of the statute" (*Id.* at p. 861), the Court determined the Railroad Commission's discretion under such language was circumscribed by the requirements of "public convenience and necessity" and this comported with the essential requirements of law. The Court therefore finds that Section 4-28's criterion for need has a sufficiently well-established meaning to meet the constitutional challenge for vagueness.

Finally, DAS asserts that because substantially all the existing certificates of public convenience and necessity for private ambulances are owned by two companies which have formed a single joint venture, the denial of DAS's application amounts to a grant of an exclusive franchise to the joint venture. Such action is alleged to violate Section 1.01(A)(14) of the Dade County Home Rule Charter which provides that franchises can only be granted upon approval of a majority vote of the electors.

Under Florida law, a certificate of public convenience and necessity is distinctly different from a franchise. *Alterman Transport Lines, Inc. v. State*, 405 So.2d 456 (Fla. 1st DCA 1981), recently explored the nature of rights conferred by a certificate of public convenience and necessity. At issue there was the legislature's ability to deregulate the trucking industry by eliminating the requirement for motor carriers to obtain a certificate of public convenience and necessity from the Florida Public Service Commission. Various motor carriers filed suit claiming that their certificates of public convenience and necessity were property rights which could not be revoked. In rejecting this argument, the court cited with approval the reasoning of two out-of-state cases which explained the difference between certificates of public convenience and necessity and franchises. *Id.* at p. 460.

The first case, *Greater Wilmington Authority v. Kline*, 285 A.2d 819, 823 (Del. Sup. Ct. 1971), held:

87

. . . there is a distinct difference between a certificate of public convenience and necessity and a franchise. A certificate of public convenience and necessity is in the nature of a personal privilege of license, which may be amended or revoked at will by the power authorized to issue it, and so does not rise to the dignity of a property right. *Franchises,* as a rule, *spring from contracts between the sovereign power and private citizens for valuable consideration,* and are not revocable at the will of the grantor in the absence of a reservation of right (emphasis supplied)

The second case, *In re Application of Ft. Crook - Bellevue B. Line,* 283 N.W. 223, 225 (Neb. 1939), noted:

The distinction between a franchise and a certificate of convenience and necessity is aptly made in *In re St. Johns River Line Col,* 1935, 7. P.U.R., N.S., 268, as follows: "A certificate of public convenience and necessity, however, is distinctly different from the grant of a franchise to use and occupy streets. The franchise to use and occupy streets is a grant of a limited property right for the use of public streets, while *a certificate of public convenience and necessity is strictly a regulatory measure,* and the granting or withholding of a certificate is an exercise of the power of the state to determine whether the rights and interests of the general public will be advanced. . . ." (emphasis supplied)

Florida law recognizes that a certificate of public convenience and necessity is different from a franchise. The Court therefore finds that the Charter provision (Section 1.01(A)(14) relied on by DAS pertaining to franchises cannot be construed as applicable to certificates for public convenience and necessity.

In light of the foregoing, the Court finds and determines that Dade County's denials of DAS's application for certificates of public convenience and necessity to operate ambulance services is supported by competent and substantial competent evidence and complies in all respects with the essential requirements of law. The Court further finds that there is no legal basis to overturn the County's decision. Accordingly, it is therefore

ORDERED and ADJUDGED that this cause be and the same is hereby dismissed with prejudice. Each side shall bear its own costs.

DONE and ORDERED in Chambers, at Miami, Dade County, Florida, this 1st day of April, 1986.