917 So.2d 1024 (2006)
LAKELAND REGIONAL MEDICAL CENTER, INC., Appellant,
v.
STATE of Florida, AGENCY FOR HEALTH CARE ADMINISTRATION, et al., Appellees.
No. 1D04-5585.
District Court of Appeal of Florida, First District.
January 6, 2006.
*1026 Stephen R. Senn and Theodore W. Weeks, IV of Peterson & Myers, P.A., Lakeland, for Appellant.
Douglas B. MacInnes, Sr., Assistant Attorney General, Office of the Attorney General, Tallahassee; Thomas F. Panza, *1027 Mark A. Hendricks and Diane Lindstrom of Panza, Maurer & Maynard, P.A., Fort Lauderdale; and Geoffrey D. Smith, Kellie Scott, F. Phillip Blank and Cassandra Pasley of Blank, Meenan & Smith, P.A., Tallahassee.
POLSTON, J.
Appellant Lakeland Regional Medical Center, Inc., the only hospital in Polk County currently with an established open heart surgery program, is challenging the constitutionality and interpretation of 2004 statutory changes that have the effect of granting Winter Haven Hospital, Inc., a license to also perform open heart surgery. We reject Lakeland Regional's arguments that these statutes violate due process and equal protection, and its statutory argument that "adult interventional cardiology services" does not include open heart surgery. Accordingly, we affirm the trial court's final judgment.

I. BACKGROUND
Under the Health Facility and Services Development Act, Florida health care providers have been required to obtain a certificate of need ("CON") for providing open heart surgery. See Fla. Admin. Code R. 59C-1.002(41)(h). In 2002, Winter Haven Hospital applied for a CON to establish an open heart surgery program in the same service district as Lakeland Regional. The Agency for Health Care Administration ("AHCA") reviewed the application and, in March 2003, noticed its preliminary approval for Winter Haven Hospital's application.
Lakeland Regional responded by filing, in April 2003, a petition for formal administration hearing, presenting issues which, if resolved in its favor, would result in the denial of Winter Haven Hospital's application. See § 408.039(5)(c), Fla. Stat. (2003) (providing inter alia that "[e]xisting health care facilities may initiate or intervene in an administrative hearing upon a showing that an established program will be substantially affected by the issuance of any certificate of need, whether reviewed under s. 408.036(1) or (2), to a competing proposed facility or program within the same district"). After completion of a final hearing, the administrative proceedings have been held in abeyance at Winter Haven Hospital's request pending the resolution of the instant litigation.
Effective July 1, 2004, the Florida Legislature amended sections 408.036 and 408.0361, Florida Statutes, to create a new licensure scheme for adult interventional cardiology services. See Ch.2004-383, §§ 6,7, at 2922-36, Laws of Fla. In doing so, the Florida Legislature noted the importance of timely access to open heart surgery procedures:
WHEREAS, appropriate access to adult cardiac care is an issue of critical state importance to all residents of the state and to all health service planning districts of the state, and
WHEREAS, the certificate-of-need process, for most geographic areas in the state, has provided adequate access to adult open-heart-surgery services to Floridians as well as tourists, business travelers, indigents, and migrant workers who receive such services, and
WHEREAS, the number of adult open-heart-surgery programs in certain health service planning districts has not kept pace with the dramatic increase in population in those areas, and
WHEREAS, there have been numerous technological advances in the area of primary angioplasty and stent procedures known collectively as percutaneous coronary interventions, and these advanced interventional treatments provide the highest standard of care for *1028 people suffering acute myocardial infarctions, and
WHEREAS, the success of these interventional treatments requires immediate access (within 1 hour) to hospitals having interventional technology and a backup open-heart-surgery program, and
WHEREAS, hospital that cannot perform percutaneous coronary interventions must resort to the use of thrombolytics, a less effective treatment in many instances, and therefore adults in need of percutaneous coronary interventions are being denied these procedures due to lack of access, and
WHEREAS, diagnosis; discharge from the transferring hospital; transfer arrangements, including, but not limited to, insurance and administrative approval; transportation availability; admission to the receiving hospital; staff availability at the receiving hospital; and, most importantly, bed availability at the receiving hospital as well as travel delays to the receiving hospital contribute to the time taken to effectuate a transfer of a cardiac patient, and
WHEREAS, the Legislature finds that timely access and availability for every adult in this state, regardless of socioeconomic class or geographic location, to these interventional treatments and open-heart surgery is of critical state concern, especially because myocardial infarctions and related coronary disease are no respecters of location or time, and
WHEREAS, to ensure that it provides the quality of care desired, each hospital that qualifies for the exemption provided by this act will be subject to more stringent criteria and will also be subject to continual monitoring by the Agency for Health Care Administration, and
WHEREAS, the Legislature intends to ensure that standards of quality are maintained while promoting competition in the provision of adult cardiac care, NOW, THEREFORE,
Be it Enacted by the Legislature of the State of Florida:
Id. at 2914-15.
The legislature added a licensure grandfather clause applicable to Winter Haven Hospital's application, which is the subject of this litigation:
(2) Each provider of adult interventional cardiology services or operator of a burn unit shall comply with rules adopted by the agency which establish licensure standards that govern the provision of adult interventional cardiology services or the operation of a burn unit. Such rules must consider, at a minimum, staffing, equipment, physical plant, operating protocols, the provision of services to Medicaid and charity patients, accreditation, licensure period and fees, and enforcement of minimum standards. The certificate-of-need rules for adult interventional cardiology services and burn units in effect on June 30, 2004, are ratified pursuant to this subsection and shall remain in effect and be enforceable by the agency until the licensure rules are adopted. Existing providers, any provider with an exemption for open heart surgery, and any provider with a notice of intent to grant a certificate of need or a final order of the agency granting a certificate of need for adult interventional cardiology services or burn units shall be considered grandfathered-in and shall receive a license for their programs effective on July 1, 2004, or the date their program becomes operational, whichever is later. That licensure shall remain valid for at least 3 years or a period specified in the rule, whichever is longer, but the programs *1029 must meet licensure standards applicable to existing programs for every subsequent licensure period.
Id. at 2934 (emphasis added); see also § 408.0361(2), Fla. Stat. (2004). AHCA interpreted the amendment to mean that any provider who has received a notice of intent to grant a CON is entitled to a license to provide such services, without regard to any pending challenge to that notice of intent. Accordingly, on July 29, 2004, AHCA issued a license to Winter Haven Hospital pursuant to the grandfathering provision of the amendments, with a cover letter indicating that adult interventional cardiology "includes adult percutaneous intervention and onsite cardiac surgery."
Lakeland Regional challenged the grandfather clause in circuit court, arguing that it violated procedural due process and equal protection. Lakeland Regional also sought a declaration over the disputed definition of "adult interventional cardiology services." The trial court ruled that the legislature "intended that the term adult interventional cardiology services would encompass open heart surgical services," and the statutory amendments are constitutional. Lakeland Regional challenges the trial court's rulings on appeal.

II. STATUTORY INTERPRETATION
Lakeland Regional asserts that open heart surgery is not an adult interventional cardiology service, and therefore, the grandfather clause is not applicable to Winter Haven's application. The trial court ruled, consistent with AHCA's interpretation, that section 408.0361(3)(a), as amended, authorizes Winter Haven Hospital to perform open heart surgery. Our standard of review for statutory construction is de novo. See BellSouth Telecomms., Inc. v. Meeks, 863 So.2d 287, 289 (Fla.2003).
"An agency's interpretation of the statute[s] that it is charged with enforcing is entitled to great deference. Although judicial adherence to the agency's view is not demanded when it is contrary to the statute's plain meaning, an administrative agency's construction of a statute it administers should be accorded great deference unless there is clear error or conflict with the intent of the statute." Mack v. Dep't of Fin. Servs., 914 So.2d 986, 989 (Fla. 1st DCA 2005) (alteration in original) (citations and quotations omitted).
AHCA's interpretation of the statute is consistent with the plain language of section 408.0361(3)(a), also added in 2004:
(3) In establishing rules for adult interventional cardiology services, the agency shall include provisions that allow for:

(a) Establishment of two hospital program licensure levels: a Level I program authorizing the performance of adult percutaneous cardiac intervention for emergent patients without onsite cardiac surgery and a Level II program authorizing the performance of percutaneous cardiac intervention with onsite cardiac surgery.

Ch.2004-383, § 7, at 2934, Laws of Fla. (emphasis added). The legislature specifically authorized rules for adult interventional cardiology services to include onsite cardiac surgery in a Level II program. AHCA's interpretation is not clearly erroneous and does not conflict with the intent of the statute, and therefore, is entitled to great deference. Accordingly, we agree with the trial court that adult interventional cardiology services include open heart surgery.

III. DUE PROCESS
Lakeland Regional argues that AHCA's licensure of Winter Haven Hospital *1030 for open heart surgery through the grandfather clause violates its procedural due process rights because the statutory amendments were applied retroactively to destroy its administrative challenge to Winter Haven's Hospital's CON application. See Art. I, § 9, Fla. Const. (stating in relevant part that "[n]o person shall be deprived of life, liberty or property without due process of law"); U.S. Const. amend. XIV, § 1 (stating in relevant part "nor shall any State deprive any person of life, liberty, or property, without due process of law").[1]
The Florida Supreme Court describes the analysis of whether statutes should be retroactively applied: "The first inquiry is one of statutory construction: whether there is clear evidence of legislative intent to apply the statute retrospectively. See Landgraf v. USI Film Prods., 511 U.S. 244, 280, 114 S.Ct. 1483, 128 L.Ed.2d 229 (1994); Hassen v. State Farm Mut. Auto. Ins. Co., 674 So.2d 106, 108 (Fla.1996). If the legislation clearly expresses an intent that it apply retroactively, then the second inquiry is whether retroactive application is constitutionally permissible." Metro. Dade County v. Chase Fed. Hous. Corp., 737 So.2d 494, 499 (Fla.1999). The Court described retroactivity:
At the outset, it should be noted that: "A statute does not operate `retrospectively' merely because it is applied in a case arising from conduct antedating the statute's enactment.... Rather, the court must ask whether the new provision attaches new legal consequences to events competed before its enactment." The general rule is that in the absence of clear legislative intent to the contrary, a law affecting substantive rights, liabilities and duties is presumed to apply prospectively. Thus, if a statute attaches new legal consequences to events completed before its enactment, the courts will not apply the statute to pending cases, absent clear legislative intent favoring retroactive application.
Id. (citations omitted).[2]
Because AHCA issued Winter Haven Hospital a license to conduct open-heart surgery pursuant to the grandfather amendment, Lakeland Regional's ability to challenge its competitor's right to perform those services has been adversely affected. These new legal consequences were clearly intended by the legislature because it expressly provided licenses to "any provider with a notice of intent to grant a certificate of need for adult interventional cardiology services." § 408.0361(2), Fla. Stat. (2004). Therefore, we address the second inquiry  whether retroactive application is constitutionally permissible.
The trial court ruled that due process was not violated because Lakeland Regional's claim to reduce its exposure to competition is not a recognizable constitutionally *1031 protected property interest, citing Harrisburg Hospital v. Thornburgh, 616 F.Supp. 699, 710-11 (M.D.Pa.1985) (holding that the statutory right of an existing provider to appear and contest the granting of a CON to another health care facility does not rise to the level of property for purposes of the due process clause, and even if it did, the existing provider got all the process due it when the legislature amended the law to indirectly take away this right), and Alterman Transport Lines, Inc. v. State, 405 So.2d 456 (Fla. 1st DCA 1981) (ruling that the statutory repeal of the right of certain motor carriers to challenge potential competitors did not violate due process). We agree that there is no due process violation because Lakeland Regional has no constitutionally protected property right in pursuing its non-final administrative hearing challenge to Winter Haven Hospital's CON application after the enactment of the grandfather amendment.
Lakeland Regional cites Environmental Confederation of Southwest Florida, Inc. v. Department of Environmental Protection, 886 So.2d 1013 (Fla. 1st DCA 2004), in support of its argument that it has a constitutionally protected property right arising from its statutory right to challenge Winter Haven's CON application by administrative hearing.[3] In Environmental Confederation, this court held that statutory changes eliminating the appellants' previous right to initiate an administrative proceeding upon notice of the Department's intent to issue a permit should not be applied retroactively. Id. at 1017-18. In the context of a Florida single subject constitutional challenge, the court addressed whether the statute at issue in that case should be applied retroactively or prospectively to appellants' challenge to a permit filed between the effective date of the statutory amendment and the subsequent reenactment. The court reasoned that because the appellants had substantive standing rights[4] to challenge certain environmental permits affected, the amendment was substantive rather than procedural and should not be applied retroactively. Id. at 1017.
However, the court in Environmental Confederation addressed only the first inquiry relevant to retroactive application of a statute  whether the legislature intended the statute to apply retroactively. The court noted that the legislature was silent on whether retroactivity was desired, and then decided that because changes made in the statutes were substantive, the amendments should apply prospectively. 886 So.2d at 1017. The court did not need to address whether retroactive application violated due process as argued here.
Although the amendments may be substantive as in Environmental Confederation, they may have retroactive effect if constitutionally permissible. See Promontory Enters., Inc. v. S. Engineering & Contracting, Inc., 864 So.2d 479, 485 (Fla. 5th DCA 2004) (noting that even if the statute at issue was substantive, the *1032 legislature intended retroactivity, and that "regardless of whether the statute is substantive or remedial, it may be retroactively applied if that is constitutionally permissible"). "Retroactive application is constitutionally permissible if it does not violate due process by abrogating a vested right." Id. at 485. Vested rights are more than an expectation of continued existing law:
If [] a right has somehow vested under a statute, repeal of the statute does not divest the holder of the right. A substantive, vested right is an immediate right of present enjoyment, or a present, fixed right of future enjoyment. To be vested, a right must be more than a mere expectation based on an anticipation of the continuance of an existing law; it must have become a title, legal or equitable, to the present or future enforcement of a demand.
Div. of Workers' Comp. v. Brevda, 420 So.2d 887, 891 (Fla. 1st DCA 1982) (citations and quotation references omitted) (holding that "until judgment has been entered awarding fees, any right under a fee statute constitutes nothing more than an expectable interest  not a vested right"); see also Campus Commc'ns, Inc. v. Earnhardt, 821 So.2d 388, 399 (Fla. 5th DCA 2002) (ruling that the claimed right to view autopsy photographs was not "a vested right within the context of the constitutional prohibition against retroactive application of legislation. Rather, it is more akin to `an expectation based on an anticipation of the continuance of an existing law'"); Brown v. Apfel, 192 F.3d 492, 496-97 (5th Cir.1999) (holding that retroactive application of statute prohibiting claimant from being considered disabled if alcohol or drug addiction was a material contributing factor to the disability did not violate due process; social security benefits are not contractual or vested property rights and may be altered or even eliminated at any time); O'Kane v. Apfel, 224 F.3d 686, 691 (7th Cir.2000) (same).
In Tefel v. Reno, 180 F.3d 1286 (11th Cir.1999), the court ruled there was no constitutional procedural due process violation by applying the newly enacted "stop-time" rule for determining eligibility for suspension of deportation. The court stated:
Applying the stop-time rule to pending administrative cases does not overturn final BIA [Board of Immigration Appeals] decisions affirming an immigration judge's decision to grant suspension of deportation. Thus, applying the rule to pending administrative proceedings merely "upsets expectations based in prior law" and does not "impair rights a party possessed when he [or she] acted, increase a party's liability for past conduct, or impose new duties with respect to transactions already completed."
Id. at 1302. See also Pinho v. Immigration & Naturalization Serv., 249 F.3d 183 (3d Cir.2001) (same; noting that all six circuits who had addressed the applicability of the stop-time rule to pending deportation proceedings "held that the stop-time rule applies to all pending cases in which a final administrative decision had not been rendered by the enactment" of the new act).
Lakeland Regional's administrative challenge to Winter Haven Hospital's application had not become final at the time the grandfather clause became effective. Accordingly, Lakeland Regional had only a mere expectation of a continuing right under the statute. See Lamb v. Volkswagenwerk Aktiengesellschaft, 631 F.Supp. 1144, 1149 (S.D.Fla.1986) (ruling that the plaintiff, with a pending lawsuit on a tort claim, had no vested property right because she only had a "prospect" to recover damages, and the statute of respose revived by a *1033 court ruling eliminated the cause of action); Clausell v. Hobart Corp., 515 So.2d 1275, 1276 (Fla.1987) (holding that application of statute to bar pending cause of action did not violate due process, citing and quoting extensively from Lamb). Therefore, Lakeland Regional has no vested constitutionally protected property right and the 2004 statutory changes do not violate due process.[5]

IV. EQUAL PROTECTION
We also reject Lakeland Regional's claim for an equal protection violation because it fails to demonstrate that "any classificatory scheme that may be created by the statute could not rationally advance a legitimate governmental objective." Rucker v. City of Ocala, 684 So.2d 836, 843 (Fla. 1st DCA 1996); see also Heller v. Doe, 509 U.S. 312, 320, 113 S.Ct. 2637, 125 L.Ed.2d 257 (1993) (stating a challenger has the burden of negating "every conceivable basis which might support" the legislation).
The grandfather amendment is rationally related to the legitimate government interest of transitioning from a CON regulatory scheme to a licensure regulatory scheme. It was not irrational for the legislature to include within the grandfather amendment hospitals who had been granted notices of intent to issue a CON by AHCA. A notice of intent is only awarded after AHCA reviews the CON application and a CON would have been awarded to Winter Haven Hospital based on this review had Lakeland Regional not challenged the application. See § 408.039(4), Fla. Stat. (2004); Fla. Admin. Code R. 59C-1.010.

Conclusion
Therefore, we affirm the trial court's ruling that the 2004 statutory changes to section 408.0361(2), Florida Statutes, do not violate due process or equal protection. We also affirm the trial court's interpretation of section 408.0361, that "adult interventional cardiology services" includes open heart surgery.
AFFIRMED.
ALLEN and VAN NORTWICK, JJ., concur.
NOTES
[1] We review appellant's constitutional challenges to the grandfather amendment de novo. Medina v. Gulf Coast Linen Servs., 825 So.2d 1018, 1020 (Fla. 1st DCA 2002); Dep't of Ins. v. Keys Title & Abstract Co., Inc., 741 So.2d 599, 601 (Fla. 1st DCA 1999). "[A]n act will not be declared unconstitutional unless it is determined to be invalid beyond a reasonable doubt." See Medina, 825 So.2d at 1020.
[2] In Metropolitan Dade County, the Florida Supreme Court noted that it had previously used a weighing process to decide whether a statute may apply retroactively, citing Department of Transportation v. Knowles, 402 So.2d 1155, 1158 (Fla.1981) and Department of Agriculture & Consumer Services v. Bonanno, 568 So.2d 24, 30 (Fla.1990). 737 So.2d at 500 n. 9. However, the Court chose not to use the weighing process, stating that "the Knowles analysis has not been used recently by this Court when discussing retroactivity." Id. Because the Knowles analysis is apparently now disfavored by the Court, we will not apply it.
[3] "[A] property interest encompasses a variety of valuable interests that go well beyond the traditional view of property," and "may be created by statute, ordinance or contract, as well as policies and practices of an institution which support claims of entitlement." Moser v. Barron Chase Secs., Inc., 783 So.2d 231, 236 n. 5 (Fla.2001).
[4] But see St. Joseph Hosp. of Charlotte, Fla., Inc. v. Dep't of Health & Rehab. Servs., 559 So.2d 595, 599 n. 2 (Fla. 1st DCA 1989) (discussing the CON statute providing standing for certain health care providers who assert an interest in the outcome of CON proceedings involving other providers and noting that the court is unaware of any authority classifying standing as a vested substantive right).
[5] Although Lakeland Regional had a right under the previous statute to challenge Winter Haven Hospital's CON application, this right does not continue where the legislature changes the statute to indirectly take away this right through its creation of a new licensure scheme. See Atkins v. Parker, 472 U.S. 115, 129-30, 105 S.Ct. 2520, 86 L.Ed.2d 81 (1985) (stating that in a case concerning "a legislatively mandated substantive change in the scope of the entire program," where "procedural fairness of individual eligibility determinations" is not involved, "the legislative determination provides all the process that is due"); O'Bannon v. Town Court Nursing Ctr., 447 U.S. 773, 100 S.Ct. 2467, 65 L.Ed.2d 506 (1980) (finding patients of a nursing home were not entitled to due process protection from decertification of their nursing home facility because the government action did not directly affect their legal rights).